HARTFORD FIRE INS. CO. v. THE STATE OF KANSAS.

1. INSURANCE COMPANIES OF OTHER STATES; *Authority to Transact Business.* Before a foreign insurance company could do any insurance business in this state under art. 11 of ch. 23 of the General Statutes, it must have obtained a certificate of authority from the auditor of state, authorizing it so to do; and before the auditor had any power to issue such certificate of authority, the corporation by itself, or agent, must pay into the state treasury the sum of fifty dollars. A certificate of authority issued without such previous payment is a nullity.

2. PAYMENT OF MONEY; *Agent of Company.* Where the auditor of state on the 25th of February 1871, issued a certificate of authority to an insurance company organized under the laws of another state, authorizing such company to do an insurance business in this state till the 28th of February 1872, without the company having previously paid the required sum into the state treasury, but on the day that the certificate of authority was issued the auditor drew his draft on the company for the fifty dollars, which was afterwards duly paid on presentation, and on the 21st of March thereafter the auditor paid the money into the state treasury; *held,* that the auditor acted as the agent of the corporation in drawing the money and paying the same into the state treasury, and the issue of the certificate before the payment of the money was without warrant of law and was void.

## *Error from Shawnee District Court.*

THE *Hartford Fire Ins. Co.* applied to the auditor of state in 1867 for authority to transact the business of fire insurance in Kansas under the laws of this state. Such authority was issued, and an annual renewal certificate was issued for the years 1868, 1869, and 1870, respectively. Such certificate for 1870 expired on the last day of February 1871. Ch. 23 of the General Statutes relates to private corporations, and art. 11 of said act, (§§ 103 to 113 inclusive,) relates especially to "insurance corporations not created under the laws of this state." Sec. 103 is as follows:

"SEC. 103. No insurance corporation created by or under the laws of any other state or territory shall directly or indirectly take risks or transact any business of insurance in this state without first obtaining a certificate of authority from the auditor of this state."

Secs. 104 and 109 specified the several matters and facts which the company must set forth in its first and annual renewal statements, including amount of its capital, nature and amount of its assets, its liabilities and losses, copy of its charter, etc. Sec. 105 prescribed the amount of capital and character of investments thereof to entitle the company to admission into Kansas. Sec. 110 is as follows:

"SEC. 110. Before the auditor shall issue any certificate of authority under this article, or any renewal of the same, there shall be paid into the state treasury, by the corporation

or its agent, for the support of common schools, the sum of fifty dollars."

Said *Hartford Fire Ins. Co.* applied by the auditor of state for a renewal of its authority for 1871, filed a "statement," and received the following certificate:

"AUDITOR OF STATE'S OFFICE, TOPEKA, Feb. 25, 1871.

"WHEREAS, The Hartford Fire Insurance Company of Hartford, in the ·State of Conn., has filed in this office a sworn statement of its condition, as required by sec. 104, art. 11, ch. 23, of the General Statutes of the State of Kansas of 1868; and whereas, said company has furnished the undersigned satisfactory evidence that it is possessed of at least one hundred thousand dollars of actual capital invested in stocks, or in bonds, or in mortgages of real estate worth double the amount for which the same is mortgaged, in accordance with sec. 105 of the same act; and whereas, said company has filed in this office a written instrument, under its corporate seal, signed by the president and secretary thereof, authorizing any agent or agents of said company, in this state, to acknowledge service of process for and in behalf of said company, consenting that such service of process shall be taken and held to be as valid as if served upon the company according to the laws of this or any other state, and waiving all claims or right of error by reason of such acknowledgment of service: Now therefore, in pursuance of sec. 104 of the aforesaid act, I, A. Thoman, Auditor of State for the State of Kansas, do hereby certify that said Hartford Fire Insurance Company is authorized to transact the business of fire insurance in this state until the 28th day of February, 1872.

"In witness whereof, I have hereunto subscribed my [L. S.]     name and caused the seal of my office to be affixed, the day and year above written.

"A. THOMAN, *Auditor of State.*"

Ch. 93 of the laws of 1871, entitled "An act to establish an insurance department in the State of Kansas, and to regulate the companies doing business therein," was approved March 1st, and was published March 9th 1871. Said act provides for the appointment of a Superintendent of Insurance, and provides also that "said superintendent shall have the sole and exclusive charge of and control over said insurance department, under the laws relating thereto, and

all powers, duty and authority now conferred by law upon the auditor of this state with respect to insurance companies are hereby transferred to and conferred upon the said superintendent." Said act contains the following provisions:

"SEC. 23. The provisions of this act shall apply to individuals and partners, and to all companies and associations, whether incorporated or not, now or hereafter engaged in the business of insurance. It shall be unlawful for any company, corporation or association, whether organized in this state, or elsewhere, either directly or indirectly to engage in the business of insurance, or to enter into any contracts substantially amounting to insurance, or in any manner to aid therein, in this state, without first having complied with all the provisions of this act.

"SEC. 41. It shall not be lawful for any insurance company incorporated, organized or associated under the laws of any other state of the United States, or any foreign government, for any purpose other than life insurance, directly or indirectly to transact any business of insurance in this state, without first procuring from the superintendent of insurance a certificate of authority so to do.

"SEC. 22. Every violation of the provisions of this act shall subject the party violating the same to a penalty of not less than one hundred nor more than five hundred dollars for each violation, which shall be sued for and recovered in the name of the State of Kansas, by the county attorney of the county in which the company is located, or the agent or agents so violating shall reside.

"SEC. 81. This act shall take effect and be in force from and after its publication."

The superintendent of insurance decided that all licenses or certificates of authority issued by the auditor for 1871 were void, and that all insurance corporations of other states must comply with the act of March 1, 1871. The *Hartford Fire Ins. Co.* refused to make such compliance, and an action was brought in the Douglas district court, under § 22 of said act, to recover the penalty therein prescribed. The case was tried at the October Term 1871 upon an agreed statement of facts. By this statement it was admitted that defendant was a corporation organized under the laws of Connecticut, and had been since March 1st 1871, and still was transacting the

business of fire insurance in Shawnee county, by means of agents residing therein; that said company had not complied nor offered to comply with the provisions of the act of March 1, 1871; that on the 25th of February 1871 defendant filed with the then auditor of the State of Kansas, as and for its renewal statement, under the laws then in force, for the insurance year commencing March 1, 1871, the certain papers herewith filed, * and made a part of this stipulation;" that the auditor, "being satisfied" with the showing made by defendant issued his certificate of authority, (same as above set forth;) that at the same time the auditor drew his draft on defendant for his fees and for the $50 required by § 10 of ch. 23, Gen. Stat., (above quoted,) to be paid into the state treasury for the benefit of the school fund; that said draft was paid, and on the 21st of March 1871 the auditor paid said sum of $50 into the state treasury. The district court gave judgment in favor of the state for $100 and costs, and the defendant brings the case here on error for review.

*Alfred Ennis,* for plaintiff in error:

1. The agreed statement of facts shows that there *was a substantial compliance,* by the plaintiff in error, with the provisions of the laws of Kansas applicable to foreign fire insurance companies and in force on the 25th of February 1871, thereby entitling the plaintiff in error to the "certificate of authority" issued to her by the Auditor of State on said day. Section 104 of ch. 23, Gen. Stat., provides that the *auditor of state,* on being *satisfied* that the capital, securities and investments remain secure as at first, *shall* furnish a renewal of the certificate of authority as aforesaid." The first, as well as the *renewal* statements, are required to be filed as so much evidence before the auditor, as well as for public inspection or information, and nothing more. The *mere filing* of the *annual* statement, not the matter it contains, is the only pre-

[* It was claimed on the part of the state that this "renewal statement" was insufficient in substance and detail; but the court declined to pass upon that question, and it is not deemed necessary to designate here the supposed deficiencies in such statement and papers.—REPORTER.]

requisite to the issuing of the "certificate of authority" so far as respects the statement. There is no provision in the statute to the effect that the "certificate of authority" shall issue upon the statement showing certain facts, or that it shall not issue upon a failure to show particular things; but on the contrary § 104, propounds, as it were, certain interrogatories for the company to answer, and truthful answers is all that is required, it matters not what the answers may be. The filing of the said statement with the auditor, *and satisfying him* of the possession of the requisite amount of capital, the safe investment of the same, together with the payment of $50 for the support of common schools, are the *only* prerequisites to the issuing of the "certificate of authority."

But objection is made to the *manner* in which plaintiff in error paid the school-fund payment. It is urged that the money was not *actually* "paid into the state treasury by the corporation or its agent," *before* the issuing of the "certificate of authority" by the auditor of state. This fact is admitted; but the auditor was satisfied; he drew his sight draft, and afterward paid the money to the proper officer, where it still remains. The statute requires that, before the issuing of the "certificate of authority" the auditor should be satisfied of the existence of certain facts, one of which is, that $50 should be paid for the support of common schools. In this case the auditor was satisfied of the payment of the $50, because he had received the same to be by him paid into the state treasury, which he subsequently did. There was nothing irregular or even unusual about this. The auditor as an executive officer of the State of Kansas thus assumed to speak and act *for said State*, thereby receiving and receipting for the moneys belonging to the said state; and the treasurer of state, having received and receipted for the same, thereby ratified and approved of the *manner* of the said payment, hence the state is now estopped from objecting to the same.

How in the name of justice, equity and good conscience, can the defendant in error, *The State of Kansas*, dare ask this

honorable court for assistance in repudiating her own deliberate acts? in declaring that the parchment upon which is written her "certificate of authority," or *most solemn contract*, attested by the impress of one of the great seals of state, is a worthless document, bearing a falsehood upon its face and unworthy of confidence? The *Great State of Kansas* will certainly not be so ungrateful after having once received plaintiff in error's money, and while still retaining the same, as to insist that because the said money was paid into her treasury by some other hand than that of the "corporation or its agent," the payment was not accompanied with the proper formalities, hence should be forfeited, and plaintiff in error compelled to pay a second time.

2. By the laws of Kansas applicable to foreign fire insurance companies in force on the 25th of February 1871, the auditor of state was *ex-officio* insurance commissioner for the state of Kansas, *clothed with the exclusive authority* and power to judge and decide whether or not plaintiff in error had complied with the requirements of the laws; and his decision and judgment in the premises, to the effect that plaintiff in error had so complied, coupled with the act of issuing the "certificate of authority," is *conclusive*, and connot be attacked in a collateral proceeding; therefore the ruling of the court below in admitting evidence (and considering the same as proving the matters therein stated,) of facts tending to show a non-compliance by plaintiff in error with the requirements of the laws at the time of issuing said certificate was error.

The foregoing propositions are too well established to now require an elaborate argument to demonstrate their correctness. The case of *Porter v. Purdy*, 29 N. Y., 106, is exactly in point, and to which the attention of the court is especially called. So also is the case in 15 Ind., 395. And see 3 Wend., 42; 21 Howard, 539; 12 Wheat., 19; 12 Pick., 572; 1 Brod. & Bing., 432; 11 Johns., 150; 21 Barb., 656; 5 Wallace, 413.

That the case at bar is a *collateral* and not a *direct* proceeding, will not perhaps be questioned; at least, it would seem to

be a proposition too plain to admit of successful contradiction. The "certificate of authority" was issued, in this case by the auditor of state, under the laws of 1868. The regularity of the issuing of said certificate is now being questioned in an action brought under the direction of the superintendent of insurance, to recover a penalty for the alleged violation of the laws of 1871. If the case at bar is not a *collateral* proceeding, so far as respects the "certificate of authority," then there can be no such case.

It is said that the license or authority granted by the auditor is not a "contract," and that the plaintiff in error did not thereby acquire any "vested rights." There are a class of decisions, as the cases in 34 N. Y., 657; 2 Blackf., 151, and 25 Ind., 112, where it has been holden that a license to sell intoxicating liquors is not a contract, etc., and that the regularity of the issuing of the same may be inquired into in a collateral proceeding, because such license is regarded only as a temporary permit to do what would be otherwise unlawful. But the business of fire insurance is a lawful pursuit, as much so as any other trade, business, or profession, and consequently does not come within the rule of the decisions last referred to.

3. Chapter 93 of the laws of 1871, known as the *new* insurance law, was not intended to, and the same does not, apply for the year 1871 to foreign fire insurance companies doing business in this state at the time said law took effect. And if said law was intended to, and the same does in terms apply for the year 1871, to foreign fire insurance companies doing business in this state at the time the said law took effect, then the said law is *retrospective* in its operation, and therefore void.

In an official circular issued by the superintendent appointed under the new law, dated May 8th 1871, (in which that officer decides that the failure by insurance companies to pay into the state treasury the sum required by § 110 of the old law *before* the issuance of certificates of authority by the auditor rendered such certificates void,) said superintendent says:

"But if there had been a compliance with the former laws, the new act, on taking effect (March 9th) worked an instant *revocation* of any and all supposed authority to transact business for the current year. The new law requires that all insurance companies comply with *its* provisions; and such compliance is a *prerequisite* to their authority to commence *or to continue* to transact business in Kansas."

And in an official letter to an insurance company, dated Aug. 18th, 1871, after urging that said company had not made a proper compliance under the old law, the superintendent further says:

"But if you did make proper compliance, then I say, the legislature on the 9th of March repealed the law under which you complied, and thus took away your right, and prescribed other and different terms upon which alone your right to continue business in Kansas depends. This power is reserved to our legislature by our constitution."

Now are not the foregoing propositions edicts of absolute and unwarranted authority and in direct conflict with the letter and spirit of the constitution and laws of this state as well as the principles of equity and justice? The first subdivision of § 1 of ch. 104 of Gen. Stat. of Kansas of 1868, reads as follows, to wit: "*First*, The *repeal* of a statute *does not* revive a statute previously repealed, *nor* does such repeal *affect any right which accrued*, etc., under and by virtue of the statute repealed." On the 25th of February 1871 a "certificate of authority" was issued to the plaintiff in error by the proper authority, and under the laws then in force, authorizing her to transact business in the State of Kansas until February 28th, 1872. The superintendent of insurance says that the act of March 9, 1871, by one fell stroke "worked an instant *revocation*" of this authority, and that before the plaintiff in error can continue to transact business in Kansas she must comply with the provisions of the new law, and the money paid to the auditor for his fees would be lost, as no allowance would be made for the same in complying with the new law. Where is the equity and justice in such proceedings?

If the position assumed by the superintendent be correct,

then the law of 1871 is retrospective and therefore void. This court is too familiar with the subject of retrospective statutes to require the citation of any authorities upon the subject, and further notice of the subject is deemed unnecessary. The plaintiff in error insists that the new law was not intended to, and that the same does not, apply for the year 1871, to foreign fire insurance companies doing business in this state at the time of the taking effect of said new law. This is the most reasonable construction to put upon said act. The attention of the court is called to §§ 15, 39, 41, and 81 as sustaining this view.

*A. L. Williams*, Attorney-General, for the State:

1. The license to plaintiff in error to carry on business was not a contract, and the legislature had the right to, and did, repeal the old law and required new action on the part of plaintiff in error under such new law before it could transact the business of insurance in this state.   Const., Art. 12, § 1; Laws of 1871, p. 214, ch. 93; 8 Wallace, 181; 2 Parsons Contr., 712; 1 Ohio St., 15; 8 How., 103; 8 Mo., 606.

2. If an authority under the old law was a contract, the state may impeach such license, by showing that the proper steps preliminary to obtaining such license were not taken by the plaintiff in error. It is not a collateral question; it is the very thing specifically put in issue by plaintiff in error, and relied on solely as its defense.

The jurisdiction of the auditor in the matter was limited, to say the least; and it is always competent to inquire into the jurisdictional facts in such a case.

3. The plaintiff in error did not file with the auditor a legal statement of its condition for the year ending Dec. 31st, 1870.   It did not in February, 1871, file a copy of its charter, as required by law.   Nor did it pay $50 into the treasury for the support of common schools before receiving its license to do business for the year 1871.

*W. C. Webb*, also for The State:

1. The auditor's certificate was issued without authority,

and is void. The words of § 110 of the former act, Gen. Stat., p. 220, are negative and prohibitory, and unless the money be first paid into the treasury the auditor's acts are a nullity. This is conclusive.

2. The renewal statement filed by plaintiff in error is defective; it does not answer the requirements of §§ 104, 105; it does not "show" the nature and character of its investments; the greatest amount insured, nor the greatest amount allowed by the company's rules to be insured, in any one risk; nor the charter of the company. But it is said that the question of compliance is foreclosed by the decision of the auditor, and his issuance of the certificate; that "he is the exclusive judge" of the compliance with the law, etc., and that he was "satisfied." This we deny. The auditor is but a ministerial officer, and is not the "exclusive judge" of the question whether or not the law has been complied with. He has no right to be satisfied with less than sufficient legal proof, upon all the points prescribed by §§ 104, 105. When he is satisfied, he acts. But his action is subject to be reviewed by the courts, and if found wrong to be annuled or set aside. (11 Wis. 394; 16 id., 136.) It is well settled that if the statute is not complied with by the foreign insurance company, it cannot enforce its contracts. (11 Wis., 394; 3 Gray, 500; 13 id., 90; 42 N. H., 547.) It follows therefore that the mere "belief" of the officer who issues the license is not sufficient; nor is a conclusion or inference. The proof must be that which would satisfy the judicial mind, if the case were before a court—not such as satisfies the mere caprice, whim, or ignorance of the individual.

3. Counsel for plaintiff in error speaks of the auditor's "certificate of authority" as a "most solemn *contract*, attested by the impress of *one* of the great seals of the state." The state has but one "great seal," (ch. 78, laws of 1861, p. 275,) and such seal is to be kept by the governor. (Const., art. 1, § 8.) The auditor's seal is not the "great seal of the state," and never was. It never imported, and never imports the act of *the state*. It simply attests the genuineness of the auditor's

signature, and proves that the paper on which it is borne was *signed* by him.

But it is claimed that the filing of the required statement by the foreign corporation and the issuing of a certificate of authority by the proper officer of the state, constitute a "*contract*" between the corporation and the state; and that the provision of the constitution of the United States, that "No state shall pass any law impairing the obligation of contracts," is an inhibition upon the legislature with respect to such "certificate of authority" during the term for which it was given. Such doctrine is not only unsound, but it is dangerous. A *corporation* created under the laws of Connecticut is not a *citizen* of Connecticut, and hence cannot migrate to Kansas, and claim the same relative rights here that a citizen of Connecticut can claim on his removing to this state. The *citizen* of any other state may remove to this state, and locate here, without let or hindrance, being subject, from and after his domiciliation, to the same laws, and enjoying all the privileges and immunities, as citizens of this state. A *foreign corporation* stands on no such footing. In *Slaughter v. The Commonwealth*, decided in the Virginia Court of Appeals, (13 Grattan, 767, 773,) Mr. Justice Samuels says:

"I have no doubt of the power of the general assembly of Virginia *to forbid* foreign corporations from engaging in any pursuit within the state; and of consequence to grant permission to engage therein *only upon terms.*"

In the case of *Manhattan Life Ins. Co. v. Warwick*, decided in 1871 in the Virginia supreme court of appeals, 20 Grattan, 614, 623, Mr. Justice Anderson says:

"The plaintiff in error, (the Manhattan Life Ins. Co.,) is a corporation of the State of New York. It was created by a law of that state, and cannot exist outside of its limits. It had no power to make contracts, or to do business in Virginia, *but by permission of the state.*"

In the case of *Paul v. Virginia*, decided in 1870, (8 Wallace, 168,) *Paul*, an agent of several fire insurance companies of New York, was indicted, convicted and fined for violating the law of Virginia which imposed a penalty of not less than

$50 on every person who should "act as agent for any foreign insurance company without a license authorized by law." The New York companies claimed the right to transact business in Virginia without depositing the securities required by the Virginia statute, and without obtaining any license to carry on the business of insurance in the latter state. The case was taken to the supreme court of appeals of Virginia, and thence to the supreme court of the United States. The court decided that there was "nothing in the statute of Virginia which conflicts with the constitution of the United States," and the judgment of the supreme court of appeals of that state was affirmed. Mr. Justice Field, in delivering the opinion of the court, says:

"Having no absolute right of recognition in the other states, but depending for such recognition, and the enforcement of its contracts, *upon their assent*, it follows as a matter of course, that such assent (to a foreign corporation to transact business therein) may be granted upon such terms and conditions as those states may think proper to impose. They may exclude the foreign corporation entirely; they may restrict its business to particular localities; or they may exact such security for the performance of its contracts with their citizens, as in their judgment will best promote the public interest. The whole matter rests in their discretion."

Now as the granting assent is entirely a matter of discretion, and the terms a matter of absolute will, can it be said that when such discretion and terms are designated in a statute, general in its nature, the mere fact that a particular foreign corporation, selecting its own time, comes in and files the required papers and makes the required payment, dealing with a mere ministerial officer only, who has no power to give assent or to withhold assent on the part of the state, that such proceedings constitute a "contract" which the legislature of the state cannot annul, or abrogate, by changing or repealing the law? In the *Land Grant Rly. & Tr. Co. v. Comm'rs of Coffey Co.*, 6 Kas., 245, 252, this court made a decision relating to foreign corporations which is instructive upon this question. The logic of said decision is, that a foreign cor-

poration cannot migrate to this state, and can exercise no right here except under "state comity." Now, as "state comity" exists only in the absence of any legislative or statutory rule, the legislature, exercising the sovereign power of the state, may prescribe any terms it pleases concerning such foreign corporations. And in view of the decisions above mentioned, and of the nature and character of the authority or permission given to a foreign corporation to transact business in this state, it would seem that such permission, or license, whether so expressed in the law or not, is always subject to the legislative will. The legislature may at any time alter or repeal the law under which the license is obtained; they may expressly revoke all licenses; they may impose any new terms, or conditions, and require new or additional statements, at their pleasure. "*The whole matter rests in their discretion.*" To deny this position, is to assert that a *foreign corporation,* having obtained a "certificate of authority"—(which in law is no more nor less than a certificate of a ministerial officer that the corporation has complied with certain requirements of the law)—may continue to transact business for a given period, say one year, even though it become insolvent; even though it violate its charter; even though its charter is repealed by the state that created it; even though it had not in fact complied with the statute, but had obtained such certificate through fraud or mistake; even though it should become apparent that its contracts were but a snare to entrap and swindle the ignorant and the unwary. More than all this, to deny the power of the legislature to impose new terms and prescribe new conditions, *at its pleasure,* is to assert that a *foreign corporation* is an institution which, once admitted to enter the state, *towers above the law,* and may rob and plunder, and riot in its ill-gotten gains with impunity. And such is the legitimate deduction of the argument that the "license" issued to such a corporation is a "contract," the obligation of which cannot be impaired. Such doctrine is not only unsound, but it is dangerous. While it is admitted that

foreign corporations may make contracts with other corporations, or with individuals, it is very certain that a "license" or "permit" to transact business *in* the state, is not a "contract" *with* the state.

4. The existence of the legislative power being shown, the question is, What was the intent, and what the effect of the act of March 1st 1871? By § 81 it is declared that it shall take effect "from and after its publication," and it was published March 9th. Secs. 22 and 23 in express terms make the provisions of the act apply to *all* insurance corporations "doing business" in Kansas, declaring it to be "unlawful" "to engage" in the business of insurance, or to "enter into" any contract" of insurance, "without *first* having complied" with said act, and impose a fine for every violation of the law; and to make it still more explicit § 41 reasserts that "it shall not be lawful for any insurance company organized or associated under the laws of *any other state*, or any foreign government, to *transact any business of insurance in this state* without first procuring from the *superintendent of insurance* a certificate of authority so to do." Words cannot be plainer. But to show that the sections cited were intended to put the law into force at once, on being published, as to all insurance corporations of other states and governments, we have but to examine §§ 43 and 48. Sec. 43 provides that "All (fire) insurance companies heretofore organized *under the laws of this state* shall be allowed *one year* from the last day of February 1871 to comply with the foregoing sections of this act;" and § 48 provides "that existing life insurance companies *formed under the laws of this state* shall be allowed *six months* from the passage of this act within which to comply with its provisions relating to such companies." These *exceptions* deliberately made in favor of the companies of *this state*, add force to the argument that it was the *intent* of the law to apply *at once* to all companies of *other states*, and that they must comply with its provisions before they could legally commence *or continue* business in this state. "The exception affirms the rule in cases not excepted." The plaintiff in error having

deliberately violated the law, the judgment should be affirmed.

The opinion of the court was delivered by

KINGMAN, C. J.: An action was instituted against the plaintiff in error, a foreign corporation, engaged in the business of fire insurance in this state, without having obtained from the superintendent of insurance of the state a certificate of authority to transact such business of insurance in this state, and without having any legal right, warrant, or authority to transact the business of fire insurance in the state of Kansas. The answer was a general denial, and a special defense, setting up a license or certificate of authority issued to the plaintiff in error by the auditor of state on the 25th of February 1871, authorizing the corporation to transact the business of fire insurance in the state from the first day of March 1871, until the 28th of February 1872. The issues so made were tried by the district court without the intervention of a jury, and resulted in a judgment against the plaintiff in error, to reverse which the case is brought to this court. The case was tried on an agreed statement of facts, and documentary evidence, all of which are brought to this court.

Two questions are presented: *First*, did the auditor issue a valid certificate of authority to the plaintiff in error, as set up in his answer? *Second*, did such certificate of authority if valid, confer upon the plaintiff in error such a vested right to do business until the last day of February 1872, as would preclude the legislature from imposing further regulations and duties upon foreign corporations as a necessary prerequisite to their transacting business in the state? If the first of these questions is decided in the affirmative, then it will become necessary to determine the second.

We think the record shows a want of conformity with the requirements of the statute on the part of the insurance company in matters essentially requisite to be done by the company under the law. Whether such informalities can be inquired into in this proceeding, or whether the decision of

15

the auditor that the company had complied with all the requirements of the law, and thereupon had issued his "certificate of authority," is conclusive, need not be decided here. It is an interesting question, and was somewhat elaborately argued; but it is not in our way. There is one fact that is *jurisdictional* in its character. By § 110, Gen. Stat., page 220, it is provided that "*before* the auditor shall issue. any certificate of authority, or any renewal of the same, the corporation or its agent shall pay into the state treasury for the support of the common schools the sum of fifty dollars." The payment of this money was an act to be done by the corporation, and to be done *before* it had a right to ask for the certificate of authority, and without the payment of which the certificate of authority is a nullity. In this case it appears that the certificate of authority was issued on the 25th of February 1871, and that the money was not paid into the treasury until the 21st of March thereafter. When the auditor issued the certificate of authority he receipted for the fifty dollars and his fees, and drew on the plaintiff in error his draft for the same, payable on sight, and transferred the same to the Topeka Bank. The draft was paid on presentation, and on the 21st of March the money was paid by the auditor into the treasury. Until it was paid into the treasury the state had no interest in it, or control over it; and until it was so paid the auditor had no power under the law to issue the certificate of authority. Plaintiff in error claims that the state received the money when the auditor drew the draft; that the auditor acted as the agent of the state in receiving the money, and therefore the state cannot in honor deny that it received the money. The argument involves an error of fact, and an entire misapprehension of the duties and powers of a public officer. The error of fact is in assuming that the drawing of a draft payable on sight is the same thing as receiving the money from the drawee; but the much more serious error is found in the declaration that the auditor acted as the agent of the state in. drawing the draft, or in receiving the money when it was paid. The limits of an officer's

authority are found in the law. The law in this case, for reasons in harmony with our entire financial system, gave no authority to the auditor to collect the money. It is one of the checks of our system that the treasurer receives the state's money, and the amount which he receives shall appear in the records of some other office. It is not necessary to say that the plaintiff in error was bound to know the details of our financial system, or be familiar with its general spirit; but when it came within the state, seeking to extend its business among our people, it was bound at its peril to take notice of express provisions of law stating the terms upon which it could be permitted to do business in the state. One of the conditions was, that by itself or its agent it should pay a certain sum into the state treasury *before* the auditor could issue the certificate, and before it acquired any right to a certificate, or any authority to do business in this state. If the corporation chose to pay this through the auditor, then for that purpose the auditor was the agent of the *corporation*, and not of the state; and until the money reached the state treasury it was under the control of the corporation and not of the state. Therefore, when the certificate of authority was issued, one of the vital conditions upon which it could be granted had not been complied with on the part of plaintiff in error. It was a condition that neither the auditor nor any other officer could waive or dispense with. Because of the non-payment of this money the certificate itself was void, and presented no defense to the action.

This conclusion renders it unnecessary to consider any of the other questions raised in this case.

The judgment is affirmed.

All the Justices concurring.