### THE CITY OF EUREKA v. FRANK DAVIS.

1. SECTION 2 OF CHAPTER 86, OF GENERAL STATUTES, *is Constitutional.* Section 2 of chapter 86 of the General Statutes, is a valid and constitutional enactment, and is not avoided by that section of the constitution which provides that "no bill shall contain more than one subject, which shall be clearly expressed in its title."

2. PETITION FOR DRAMSHOP LICENSE; *When License is Void.* The list prescribed by said chapter 86, showed 341 adult residents of the city of Eureka, a city of the third class. A petition for a dramshop license, containing but 156 names, was presented to the city council, approved by the council, and license ordered to be issued. A license was issued, signed by the mayor and attested by the clerk, and the license fee paid into the city treasury. *Held,* That such license, having been issued in plain disregard of the law, was void, and afforded no protection to the defendant in the sale of intoxicating liquors, and that the city was not estopped by the illegal and unauthorized acts of its officers from prosecuting the defendant for a violation of the city ordinance. Further, *held,* that that which the city council may not do directly, it may not do indirectly; that as it may not pass an ordinance to authorize the issue of licenses for the sale of intoxicating liquors, without a petition of a majority of the adult residents, so it may not, after enacting a legal ordinance, grant a valid license upon a petition signed by less than half the number of adult residents, as shown by the official list.

### *Appeal from Greenwood District Court.*

IN January, 1878, *Frank Davis,* the appellant, was tried and convicted in nine cases in the police court of the city of Eureka, for selling intoxicating liquors contrary to the provisions of ordinance No. 55 of said city, entitled "An ordinance regulating dramshops, tippling-houses, etc." Said nine cases were forthwith appealed to the district court, where, at May Term, 1878, of said court, this case, being one of the aforesaid cases, was tried by the court without a jury, and the appellant was found guilty as charged, and fined in the sum of $25 and costs of suit, and ordered to stand committed until the fine and costs were paid. *Davis* now brings his case to this court on appeal.

*T. L. Davis*, for appellant.

*Clogston & Martin*, for appellee.

The opinion of the court was delivered by

BREWER, J.: Defendant was convicted in the district court of Greenwood county on a charge of selling liquor without a license, and from such judgment of conviction he appeals to this court.  The prosecution was commenced by the city of Eureka, in the police court of that city, and was for a violation of the city ordinance.  On the trial, the fact of the sale was conceded, and the defense was that defendant had a license.  The validity of this license, and the right of the plaintiff to question its validity, are the questions in the case. That a petition signed by a number of citizens was presented to the city council, approved by the council, and license ordered to be issued; that a license was issued, bond given, and payment for the license made to the city treasurer, and the money retained by him up to the time of the trial, were all proved.  The city then offered in evidence the list of adults required to be made and filed by ch. 86, laws 1868, which list contained the names of 341 persons.  The petition contained only 156 names.

Upon this, counsel for appellant contends that the city council is the tribunal to pass upon the sufficiency of the petition, and that having adjudged it sufficient, that matter is no longer open to inquiry; and secondly, that the city having received and retained the license money, is estopped from questioning the validity of the license or prosecuting the defendant for doing what it had given him a license to do; and thirdly, that section 2 of said chapter 86, which prescribes that the list of adults provided for in section 1 is conclusive as to the number thereof in certain cases, is unconstitutional, because the subject-matter thereof is not expressed in the title to the act.

We cannot concur with counsel in any of these matters, and are of the opinion that the ruling of the district court

was correct, and that the judgment must be affirmed. In reference to the last question, the title to the act is, "An act providing for registration of all adult persons in each county in this state." Section 1 declares who shall make the registration, and when, where the same shall be filed, and what it shall contain. Section 2 reads, "That whenever it is necessary to ascertain the number of adult persons . . . upon which to have any action of the county commissioners or other county officers, the list on file in the county clerk's office shall be taken as conclusive on that subject." In other words, § 2 prescribes the use to be made and the effect to be given to the list. Is this outside the scope of the title, and foreign to it? We think not. It must be borne in mind that while the constitutional provision is mandatory, it must be applied in a fair and reasonable way; otherwise, it would become the source of more injury than the ills it was designed to remedy. We are not to expect in the title a synopsis or abstract of the entire act. It is enough if the title indicates clearly, though in general terms, the scope of the law. As is said by Judge Cooley in his Constitutional Law, page 144:

"The general purpose of these provisions is accomplished when a law has but one general object, which is fairly indicated by its title. To require every end and means necessary or convenient for the accomplishment of this general object, to be provided for by a separate act relating to that alone, would not only be unreasonable, but would actually render legislation impossible."

Now here is an act which by its title, we are informed, is concerning registration of adults. What more natural than a statement in such a law of the effect of registration when made? As in a statute "regulating conveyances of real estate," we find a statement of the place where such conveyances are to be recorded, and the effect of such record.

Passing now to the other questions (and we shall consider them together), we remark that it is undoubtedly true that the council is the tribunal to which the petition must be presented and by which its sufficiency must in the first instance be determined; but such determination is not, at least as to the mat-

ter in question in this case, conclusive. Here is not a matter of judicial discretion, but a matter of mathematical calculation. The law has made a certain list conclusive as to the number of adult persons. It has not left this matter open to inquiry by the council; and it has also declared that a majority of the adult persons shall sign the petition. Now when a petition is presented whose number of names is not half of the number on the list, no determination or finding of the council can make that a majority. That which a council may not do directly, it may not do indirectly. It may not by ordinance dispense with a petition of the majority; it may not accomplish the same result by finding that 156 is a majority of 341. And there is no *bona fide* purchaser of bonds before maturity in this case. The question arises between the original parties. No equities have intervened; nothing has transpired since the issue of the license to make it more binding as a contract, or to estop the city from denying its validity. The city council is not the city, any more than the treasurer is the city. They are but officers, and in this respect the functions of the council are of no higher order than those of the treasurer. And as said by Chief Justice KINGMAN, in *Hartford Fire Insurance Company v. The State,* "the limits of an officer's authority are found in the law." The council had authority to grant a license after a petition, signed by a majority of the adult residents, had been presented. It had no authority in the absence of such a petition. None such was presented, not even one *prima facie* sufficient. But, say counsel, very earnestly, the city has received pay for this license and has issued it, and now can it punish the defendant for doing what it has licensed him to do? The fallacy of this is in confounding the officer with the corporation, the agent with the principal. The ordinance specified the exact amount which each licensed liquor seller should pay. Now, would it for a moment be contended that because the defendant had paid to the city treasurer the amount of such license fee, and said treasurer still retained it, the defendant had the right to sell liquor and defy prosecution? Clearly not;.

and why? Because, though an agent of the city had re-
ceived this money, it was an unauthorized act, and he could
not by it bind his principal, nor evade or nullify the law.
Suppose, further, the mayor and clerk had issued a license,
they being the officers to execute the license, and the treas-
urer had received the money, would not the same result fol-
low, and for the same reason? Does it make the defendant's
case any stronger that the council had, without any authority
and in defiance of the law, directed the mayor and clerk to
issue such license? This is not a case where discretion hav-
ing been vested in an officer, he has exercised that discretion,
and the city seeks to repudiate his act. It is a case where
the officers of a city have assumed to disregard the law; and
a party at whose instance they acted, and who being charge-
able with knowledge of the law, must be presumed to have
known that they acted without authority, invokes their acts
to protect him from the consequences of his own violation of
the law. Nor is there any room for the application of the
doctrine of estoppel. There is no estoppel when both par-
ties act with full knowledge of the facts and the law. The
dramshop act and the ordinance each requires, as a condition
precedent to the action of the council, a petition of a majority
of the adult residents. Every one is presumed to know the
law; and, in fact, probably no law in the statute book is
better known than the dramshop act. The list of adults is a
public document, on file in the county clerk's office, and open
to the inspection of every one. That list is by statute con-
clusive as to the number of adults. May any officer or com-
bination of officers disregard these provisions of statute to-day
at the instance of a citizen, and to-morrow that citizen plead
such disregard as a protection to his own unlawful acts? The
case of *Hartford Fire Ins. Co. v. The State,* 9 Kas. 210, is in
point, and conclusive. Counsel lays stress on the fact that
this is a prosecution by the city for a violation of the ordi-
nance, and not by the state for a violation of the dramshop
act; but in the case just cited, the state officers had issued
the license, and the state treasurer had possession of the

money, and the state prosecuted for the penalty. Again, we repeat that "the limits of an officer's authority are found in the law," and they who deal with officers are chargeable with notice of the limits of such authority, and can receive no protection from acts done by such officers beyond the limits of their authority.

The judgment will be affirmed.

All the Justices concurring.