## NATHANIEL B. WELSFORD V. PHILIP WEIDLEIN, *as Mayor of the City of Peabody.*

1. DRAMSHOP LICENSE; *Requisites of Petition for.* The corporate authorities of a city of the third class have no power or jurisdiction to license any person to carry on a dramshop within the limits of such a city, unless the petition presented to the city council is signed by a majority of the residents of the city, of twenty-one years of age and over, both male and female; and in the absence of the list, prescribed by § 2, ch. 35, Comp. Laws 1879, showing the number of adult persons in the city, some sufficient method should be adopted by the authorities to ascertain the actual number of adult residents of the city, before assuming to grant licenses to parties to sell intoxicating liquors.

2. DRAMSHOP LICENSE, *When Void.* The power to grant a license to carry on a dramshop, in a city of the third class, depends upon the petition of a majority of the residents of the city, of twenty-one years of age and over, both male and female; and if the city council grant a license, without the requisite petition, the action is void, and the mayor is not bound to sign any license so ordered.

### Original Proceedings in Mandamus.

ON the 1st day of December, 1879, upon the petition of *N. B. Welsford,* an alternative writ of mandamus was issued out of this court, and directed to *Philip Weidlein,* as mayor of the city of Peabody, in the county of Marion, commanding him as said officer to sign a certain license recommending the said *Welsford* as a suitable person to keep a dramshop

for the sale of intoxicating liquors in said city, or to show cause, etc.

The above-mentioned writ (omitting title) is in substance, as follows:

" *The State of Kansas, to the defendant above named:* It having been shown to us by the verified petition of the plaintiff above named —

"1st. That the city of Peabody, above named, is a city of the third class, duly organized, incorporated and existing as such under and by virtue of the laws of the state of Kansas, and has been so organized, incorporated and existing during the time of the commission of all the grievances hereinafter set forth.

"2d. That the defendant above named is, and during the time of the commission of all the grievances hereinafter set forth was, the only elected, qualified and acting mayor of said city.

"3d. That on or before the 23d day of August, 1879, the said city of Peabody had for its government two certain ordinances, duly enacted, approved and published, providing for the granting of licenses to sell intoxicating liquors, numbered and called 'Ordinance No. 5,' and 'Ordinance No. 31;' and also, on or before November 29th, 1879, had for its government an ordinance amendatory of the aforesaid ordinance No. 5, numbered and called 'Ordinance No. 38,' of which said ordinances Nos. 5, 31 and 38, the following are copies. [Copies of said ordinances omitted.]

"4th. That on the 23d day of August, 1879, the plaintiff above named presented to the city council of the said city of Peabody a petition and recommendation signed by a majority of the residents of said city, both male and female, over the age of twenty-one years, to wit, by the number of two hundred and fifty-one of such residents, recommending him, the said plaintiff, by the name as therein written of N. B. Welsford, as a suitable person to keep a dramshop for the sale of intoxicating liquors, and requesting that a license be granted him for such purpose.

"5th. That on the 23d day of August, 1879, the city council of said city granted the prayer of said petition, and ordered and resolved that a license be issued to said plaintiff in accordance with said petition.

"6th. That on the 25th day of August, 1879, said plaintiff, by the name of N. B. Welsford, duly executed to the

said city of Peabody a bond, with certain sureties therein named and thereto signed for the purposes, and conditioned in accordance with said ordinances in the sum of two thousand dollars ($2,000).

"7th. That on the 29th day of November, 1879, said plaintiff paid to the city treasurer of said city the amount of the license tax theretofore assessed and levied upon and against him in said business of selling intoxicating liquors, to wit, the sum of $211.25.

"8th. That on the 29th day of November, 1879, in accordance with all the proceedings aforesaid, the said plaintiff had issued to him his license to sell intoxicating liquors, signed by the clerk of said city, and countersigned by the treasurer of said city.

"9th. That on the 29th day of November, 1879, the said plaintiff presented to you (the said defendant) the license hereinbefore mentioned, signed by said clerk and treasurer, and demanded of you that you sign the same as mayor of the said city of Peabody, which you (the said defendant) refused and still refuse to do.

"Wherefore, we do command you, that immediately after the receipt of this writ, you sign said license, or that you show cause before this court, at the court room thereof, in the capitol building of the state of Kansas, in the city of Topeka, in said state, on the 29th day of December, 1879, why you have not done so," etc.

The defendant appeared and answered, showing cause. Counsel for the plaintiff were *Frank Doster, J. H. Morse,* and *Peck, Ryan & Johnson.* Counsel for the defendant were *F. H. Kollock* and *Gillett & Forde.* The case was argued orally by Messrs. *Johnson* and *Morse,* for the petitioner, and by Mr. *Gillett,* for the defendant. April 27, 1879, the opinion herein was filed.

The opinion of the court was delivered by

HORTON, C. J.: This is an original action of mandamus, commenced in this court by Nathaniel B. Welsford, to compel Philip Weidlein, as mayor of the city of Peabody, to sign a license granted by the city council on the 23d day of August, 1879, and issued on the 29th day of November, 1879, by the clerk and treasurer of Peabody, authorizing said Welsford to

carry on a retail dramshop in said city from November 29, 1879, to the 30th day of April, 1880. The defendant refused to sign the license, both before and subsequent to the service of the alternative writ upon him, and in his return states that his reason for so doing is, that the city council had no power to grant the license, as less than a majority of the residents of the city of Peabody of twenty-one years of age and over signed the petition or recommendation for the license; that only 251 names were attached to it, thirty of whom were non-residents of Peabody; and that 280 resident adults of the city did not sign the petition.

Upon the trial of the case before us, it was agreed that the petition was presented to the city council on August 23, 1879; that prior to January 1, 1880, there had never been any ordinance of the city of Peabody providing for a census of the city; that Peabody is embraced within Peabody township; and that when the township trustee, as assessor thereof, made a list of all persons of both sexes twenty-one years of age and upward, he did not on such list separate those residing elsewhere in said township, nor did he indicate on the list whether they resided within or without the city, nor did he make any separate list of or for the city.

We have carefully considered all the evidence presented, and are fully satisfied that a majority of the residents of Peabody, of twenty-one years and over, did not sign the petition presented by Welsford to the city council. It purports to contain 251 names, but several of these are wrongfully there. It is conceded by plaintiff that 240 resident adults of the city did not sign his petition, and the testimony introduced by the defendant clearly establishes that others (ten at least) failed to sign. The majority was not obtained to the petition. The question is therefore presented, whether the action of the city council is conclusive as to the sufficiency of the petition? Peabody is a city of the third class, and the corporate authorities have no power to dispense with the petition required by §1, ch. 35, of the dramshop act, and can only grant license to a person to keep a dramshop when there

is properly presented to the city council a petition signed by a majority of the adult residents. Not only does the dram-shop act require a majority petition as a condition precedent to the action of the council, but the ordinance of the city of Peabody, under which the council pretended to act, has the like provision. Without such petition the city council had no power or jurisdiction in the premises. Not only is a petition requisite, but it must be signed by a majority of the adult residents. Unless a majority make the request that a license be granted to the applicant, the assent of the corporate authorities cannot be legally given; if improperly given, the license is null and void. The provision concerning the petition is a limitation of the power of the corporate authorities, and does not affect merely the proceedings of the authorities in granting licenses to sell intoxicating liquors, but the juris-diction of the authorities to. act. In *City of Eureka v. Davis*, 21 Kas. 578, we held that the list prescribed by ch. 86, Comp. Laws of 1879, was conclusive of the number of adults, owing to the legislative provision to that effect. In this case, the list is absent, or at least was insufficient.

Under the statute and the ordinance, it therefore was the duty of the city council to have ascertained, by a census or otherwise, that the requisite number of adult residents had in fact signed the petition, before acting in the matter. As the power to license depended upon the petition of a majority, the want of such a majority makes the action of the council void. In fact, the council seems to have acted very hastily. The record shows that a call was signed by a majority of the council on August 23, 1879, for a council meeting that evening; that a meeting was held in pursuance to the call, and on the pre-sentation of the petition of Welsford, a dramshop license was ordered to issue at once. Under the.circumstances, we are of the opinion that the case stands before us as if no license had been granted. Therefore, the defendant very properly refused to sign the paper purporting to authorize the plaintiff to carry on a dramshop. (*State v. Young*, 17 Kas. 414; *Insurance Co. v. State*, 9 Kas. 210; *City of Eureka v. Davis*, 21 Kas. 560;

*Comm'rs of Wabaunsee Co. v. Muhlenbacker,* 18 Kas. 129; Dillon on Mun. Corp., § 639; *Bouldin v. City of Baltimore,* 15 Md. 13.)

Judgment will be entered for the defendant for all costs.

.VALENTINE, J.: I concur in the result reached by the Chief Justice.

BREWER, J., *concurring:* Whatever may be the rule as to the power of the city council, in the absence of the prescribed list, to determine the number of adult residents, and the effect of that determination upon the validity of a license issued in pursuance thereof, I think this court, in the exercise of its discretion, should never compel any officer to sign or issue a license, when it appears as a fact, and notwithstanding the determination of the council, that a majority of the adult residents have not in fact signed the petition. I think the principle laid down in *The State, ex. rel., v. Comm'rs of Harper County,* ante, p. 456, controls this case, and compels the judgment for the defendant.