Hon. DANIEL M. VALENTINE, } Associate Justices.
Hon. DAVID J. BREWER,

| | |
|---|---|
| 24 | 1 |
| 43 | 119 |
| 24 | 1 |
| 44 | 192 |
| 24 | 1 |
| 46 | 756 |
| 24 | 1 |
| 48 | 754 |
| 24 | 1 |
| 54 | 512 |
| 24 | 1 |
| 58 | 685 |
| 58 | 802 |
| 24 | 1 |
| 66 | 460 |
| 24 | 1 |
| 70 | 395 |
| 24 | 1 |
| 80 | 482 |

---

## The State of Kansas v. Fred. M. Spaulding.

1. PRELIMINARY EXAMINATION *for Embezzlement; Practice.* A preliminary examination was had upon a complaint charging defendant with the embezzlement, *as city clerk,* of certain moneys of the city of Leavenworth. Afterward an information was filed containing several counts, each charging the embezzlement of the same moneys at the same time and as the property of the same party, but differing in this, that one charged him with embezzling as *clerk,* another as *agent,* another as *servant,* and so on. *Held,* That a special plea that defendant had had no preliminary examination, except upon the charge· of embezzling as clerk, and that therefore all the other counts should be stricken out, was properly overruled.

2. JURORS—*Their Opinions and Qualifications.* Certain parties called as jurors testified on their *voir dire* that they had heard, or read of the matters charged in the information, and had formed opinions thereon; but it appearing from the whole of their examinations that such opinions were not settled, or fixed, and that they could give full and fair consideration to all the testimony and be guided solely by it in their conclusions, it is held that the challenges were properly overruled.

3. ESTOPPEL; *Conviction Sustained.* Defendant was city clerk. By ordinance, it was his duty to prepare and seal city licenses upon production to him of the receipt of the city treasurer showing that the license-money had been paid. In fact, for years the custom had been for the licensee

1—24 KAS.

The State v. Spaulding.

to pay the money directly to the clerk and receive from him the license, and the clerk thereafter handed the money to the treasurer. The entire business was transacted by the clerk. This was done to the knowledge of the mayor, council, and other officers of the city. Defendant embezzled certain of the moneys thus received by him. It did not appear that the city ever disavowed this authority, or ever made any effort to re-collect from the licensees these moneys. *Held*, That a conviction under an information charging the embezzlement of these as the moneys of the city must be sustained, and that though neither the city nor the licensees might have been concluded by his acts, yet that he, by the issue of the license, was estopped from denying that the moneys which he had received in payment thereof were the moneys of the city.

### *Appeal from Leavenworth District Court.*

INFORMATION for embezzlement. Trial at the December Term, 1879, of the district court, and verdict and judgment for *The State.* The defendant, *Spaulding,* appeals. The facts are stated in the opinion.

*Thos. P. Fenlon,* and *Lucien Baker,* for appellant.

*Jos. W. Taylor, N. H. Wood,* and *E. L. Carney* (City Attorney), for The State.

The opinion of the court was delivered by

BREWER, J.: The defendant was convicted in the district court of Leavenworth county of the crime of embezzlement, and from such conviction he has appealed to this court.

The first question arises upon the overruling of the special plea filed by the defendant. The complaint filed in the police court of Leavenworth city, and the warrant thereon issued, charge that the defendant, F. M. Spaulding, as city clerk of the city of Leavenworth, embezzled $5,200 of moneys belonging to the city of Leavenworth, on the 14th day of August, A. D. 1879.

The information filed by the county attorney in the district court of Leavenworth county, contains seven counts and charges, as follows:

First, the defendant, "as officer," to wit, city clerk of Leavenworth city, with embezzlement of $5,200 of the

money of the city, etc.; second, with embezzlement as officer, agent, clerk, servant and employé; third, with embezzlement as agent, clerk, and servant; fourth, with embezzlement as agent, servant and bailee; fifth, with embezzlement as agent of the city, etc.; sixth, with grand larceny of $5,200 of the money of Leavenworth city; seventh, with embezzlement as bailee of the city.

The objection is, that the defendant had had no preliminary examination as to any charge except that contained in the first count, and that therefore the prosecution should have been limited to that count. The matter in the sixth count may be put out of consideration, as before the commencement of the trial, that was abandoned under the ruling of the court, and the defendant was tried simply upon the counts charging embezzlement. In reference to these counts, it will be noticed that they charge the embezzlement of the same money, at the same time, and as the property of the same party. The only difference between them is in the relation which the defendant is charged to have sustained to the party whose money was embezzled. In one he is called an officer, its clerk; in another, an agent; in another, a bailee, and so on. It is the same act, the same wrong which is complained of in each count. It is like an information for murder, which, in different counts, charges the killing to have been done with different instruments, or in a different manner. This is done as a matter of precaution, to meet the possible differences in the testimony. (1 Wharton's Crim. Law, 6 ed., §§ 424, 425.) In the first of these sections, the author says: "Every cautious pleader will insert as many counts as will be necessary to provide for every possible contingency in the evidence, and this the law permits. Thus, he may vary the ownership of articles stolen in larceny, or houses burned in arson, or the fatal instrument in homicide."

Now in these cases, it is not necessary that a separate preliminary examination be had for each count, or that the complaint or warrant be as full and include all the various forms charged in the different counts. The statute provides that

"No information shall be filed against any person for any offense, until such person shall have had a preliminary examination therefor, as provided by law, before a justice of the peace." (Criminal Code, § 69.) Now, if six separate offenses are charged in these six counts, the objection was well taken; but if only one offense, then, though that offense may be charged in different forms in different counts, it was not well taken. Turning to the provisions concerning preliminary examinations, we find that a complaint may be filed charging one offense, and the defendant, upon examination, may be bound over to answer for another, and that without the filing of any new complaint. (*Redmond v. The State*, 12 Kas. 172.) The complaint may be filed with one officer and the warrant returned to, and the examination had before, another. (Criminal Code, §§ 36, 37, 40, 44, 48.) In such case, the warrant seems to be the basis of the proceeding before the examining magistrate, and the fullness of statement required in a criminal pleading is seldom found, and not to be expected in a warrant. It will be remembered that these preliminary proceedings are generally had before justices of the peace, officers not learned in the law, and if the same fullness and precision, the same precautions against all the contingencies of the testimony were required there as in the information or indictment, justice would be often delayed and defeated. All that can be required is, that there shall be a single statement, containing the substantial facts of the offense charged, and then the prosecutor, in preparing the information, may use many counts, varying in them the formal and non-essential matters of the crime. He may not add a new offense. To larceny he may not add robbery; nor, to murder, arson. Neither may he add to the larceny of one piece of property, the larceny of another. He may not substitute one offense for another; but he may, by several counts, guard against the contingencies of the testimony. (*The State v. Smith*, 13 Kas. 274.) We think the ruling of the district court was correct.

A second matter is the alleged error in overruling the challenges of certain jurors. One juror testified that he had

an opinion, founded upon rumor, that public money was missing; that he had no opinion as to the guilt or innocence of defendant; and that he believed defendant was city clerk. Another, that he had an opinion that public money was lost or stolen; that he had, on reading of the matter, made no inquiry whether it was true or false; and that his opinion would not influence him in any way in the trial of the case; and that he could give due consideration to the testimony. A third gave substantially the same answers to the questions put to him. Within the rule laid down in the Medlicott case, 9 Kas. 257, we think the challenges were properly overruled. It does not appear that either of these parties had such settled opinions or convictions as would prevent them from being impartial jurors. A matter of this kind always gets into the papers, and is the subject of talk in the community, and it would be almost impossible to find an intelligent man in the county who had not read or heard of it. The use of the word "opinion" is not always conclusive. If unexplained, and upon an essential and disputed fact, it may be. (*The State v. Brown*, 15 Kas. 400.) But the real condition of the juror's mind is to be determined from the whole of his testimony. He may have heard or read, but if he appears free to give full consideration to all the testimony, and to be influenced by it alone, he is competent. So far as the fact that defendant was city clerk is concerned, we do not think that actual knowledge thereof would disqualify. There are facts in many cases which must be proved, and yet facts which all men know. The fact that a certain party is an incumbent of a prominent public office, is one which would be difficult, if not impossible to find a citizen ignorant of. In a prosecution for malfeasance in that office, must the knowledge of such incumbency disqualify a juror? If a public building is destroyed by fire, every one knows of it. Could no man sit as a juror upon the trial of one charged with setting it on fire who knew that the building had been burned? We think the jurors were competent and the rulings of the district court correct.

We pass now to the vital question in the case, one very forcibly presented and fully discussed by counsel on both sides, and one of great difficulty. The facts upon which this question arises are these: Defendant was the city clerk; the money which he is charged with embezzling came from two sources — licenses, and from what is known as the "dog tax." Under the city ordinances, applicants for licenses were required to pay the license fee to the city treasurer, who issued duplicate receipts therefor, upon the production of which the license was to issue. The city clerk prepared and attested the license, which was signed by the mayor, but he had nothing to do with the receipt of the money. The provisions concerning the dog tax were different, for as to that the ordinance in terms authorized the clerk to receive the tax, and thereafter pay it over to the city treasurer. Unquestionably this money, while in his hands, was city money, and an embezzlement of it was an embezzlement of city funds. But this was only a small portion of the moneys charged to have been embezzled. By far the larger portion was received from licenses, and this license-money was received by him under a custom which had existed for years, and to the knowledge of the mayor, council, and other officers of the city. The applicant for a license would go to the city clerk, pay him the money, and receive the license, which he would take to the mayor for his signature. This money, thus received, was thereafter paid over by the clerk to the treasurer. In other words, to avoid the circuity of going to the treasurer, obtaining his receipt, and with that obtaining from the clerk the license, the business was transacted directly with the clerk. This, starting as a matter of convenience, had been for years an established custom. The license-money all passed through this channel into the hands of the treasurer. It did not appear that the city had ever disavowed defendant's authority to receive these moneys, or had ever made any effort to re-collect them from the licensees.

Upon these facts, defendant asked the court to instruct the jury that no conviction could be had for embezzling this

license-money, inasmuch as the charge was of embezzling money of the city, and this money never having passed into the hands of the treasurer, was still the money of the various licensees, or at any rate was not the money of the city. This the court refused to give, and on the other hand charged in substance that the city was an incorporation and might employ agents without providing therefor by ordinance, and that if one with the assent of the mayor and council, acting in the capacity of agent, clerk, servant or bailee to the city should receive moneys belonging to the city and embezzle them, he might be convicted, although the ordinances provided that all dues of the city should be payable to the city treasurer. Upon these facts it is strenuously insisted by defendant that, within the ruling in the case of *The Hartford Ins. Co. v. The State,* 9 Kas. 210, this money was still the money of the licensees. In that case the law required that the license fee should be paid into the state treasury before any license should be issued by the auditor. There as here, the insurance companies had been in the habit of transacting their business entirely with the auditor, paying him the money and receiving from him the license, and leaving the auditor to settle with the treasurer. After the receipt by the auditor of the money and the issue by him of the license, but before any money had been paid to the treasurer, the old law was repealed and a new law enacted. It was held by this court that the new law controlled, that the license was improperly issued, and that the auditor in receiving the money was the agent of the insurance company, and not of the state. In the opinion, KINGMAN, C. J., says: "The limits of an officer's authority are found in the law." And again: "If the corporation chose to pay this [the license-money] through the auditor, then for that purpose the auditor was the agent of the corporation, and not of the state; and until the money reached the state treasury, it was under the control of the corporation, and not of the state." The same doctrine was reaffirmed in the case of *The City of Eureka v. Davis,* 21 Kas. 578. The ordinances give to a city officer the limits of his

authority precisely as the statutes give to the state officer his
limits.    The city is not bound by the acts of the one outside
of those limits, any more than the state by the like acts of
the other.    The money paid by the licensees to the clerk
was within their control until paid to the treasurer.    They
could recall and recover it.    The city could ignore the pay-
ment, and collect it again.    That the licensees have not as-
serted their right, does not disprove its existence.    They may
yet assert it and recover their money, and the city may yet
call upon them for the license fees.    As their money, they
may prosecute for its embezzlement, and this prosecution
would be no bar.    He may yet, and rightly, pay it back to
them, or they may recover it by suit—and then upon what
will this prosecution rest?    The anomaly would be presented
of a conviction for embezzling certain moneys as the property
of one party, and a judgment asserting that it belongs to
another.    The question is not one simply of moral turpitude,
but of legal right.    The defendant is entitled to protection
against several prosecutions for the one wrong.

On the other hand, the state rests upon the broad propo-
sition that when a party assumes to act for another, he is
concluded by that assumption, no matter who else is bound;
that, if A. assumes to act as the agent of B., and receives
money belonging to B., he cannot thereafter deny that it is
B.'s money, and that, notwithstanding B. is not concluded by
his acts, and though in fact he was not the agent of B.; that
this doctrine, universally recognized in civil, is equally true
in criminal law.    A man may not say: "I have the right to
receive money," and receive it, and then, when challenged
for its receipt or embezzlement, avoid liability by saying, "I
had no right to receive it."    He has voluntarily assumed a
position, the responsibilities of which he may not avoid.
The defendant may not say that he holds this money simply
for the licensees, because he himself has issued the licenses,
which he might rightfully issue only when the city had re-
ceived the money; that by issuing, he conclusively, so far as
he was concerned, affirmed that the money he had received

and was holding was city money. The law of estoppel binds him, whether it binds any one else or not, and is equally potent in a criminal as well as a civil action. Concede that there may be a difference between a private and a municipal corporation, as to whether the corporation is bound by the knowledge of its officers of the acts of the assumed agent, (for the by-laws of the former are known only to its officers,) and if they permit one to continue acting as agent, outside the scope of his actual powers, parties dealing with him may be justified in presuming that his apparent are his real powers, and so hold the corporation to his acts. While the ordinances of the latter are of public knowledge, and every one is chargeable with notice of the limit of his powers as defined by the ordinances, yet, so far as the agent is concerned, the rule is the same, and whether he be acting for an individual, a private or a municipal corporation, he binds himself at least, and equally in all three cases. It is indeed further said, that this was, in law and in fact, the city's money; that the doctrine of ratification applies; that any principal may ratify the acts of an assumed agent, and that such ratification is equivalent to prior authority; that here the city council, the mayor and other officers had full knowledge of the manner of conducting the license collections; that for years they permitted it to continue in this way, and that permitting it to be so done was equivalent to granting authority to so do it; that the city has never attempted to re-collect this license-money, nor the licensees to recover it from the clerk, and that therefore all parties in interest have assented to this manner of doing business, and that it would be the height of legal absurdity to permit the chief actor, the real wrong-doer, to dispute the authority he has assumed and avoid liability for a crime which his own assumption of authority has alone given him power to commit. Reference is made to 2 Wharton on Crim. Law, (7th ed.,) § 1920, in which the author says that "while the reason of the thing requires that the money embezzled should have been received by the defendant within the orbit of his employment, yet where he

succeeds in getting money on the basis of such employment from third parties, and when there is a legal duty resting on him to pay over such money to his employers, then the embezzlement of such money is within the statute."

In *Ex parte Hedley*, 31 Cal. 108, the court ruled that "If an agent obtains the money of his principal in the capacity of an agent, but still in a manner in which he was not authorized by his agency to receive it, and converts the same to his own use with intent to steal, or embezzle it, it is money received 'in the course of his employment as agent.'" It is true that case is not parallel with this, for in that it appeared that the master paid the checks of the agent, supposing them to have been drawn in the prosecution of the agency; he actually obtained the principal's money. In *Rex v. Beechy*, 1 British C. C. 318, a clerk authorized to receive money *at home* from out-door *collectors*, received it *abroad* from outdoor *customers;* yet the case was held to be within the statute. See also *Rex v. Williams*, 6 C. & P. 626.

Bishop, in his work on Criminal Law, (3d ed.,) § 367, says that "In reason, whenever a man claims to be a servant while getting into his possession by force of his claim the property to be embezzled, he should be held to be such on his trial for the embezzlement. Why should not the rule of estoppel, known throughout the entire civil department of our jurisprudence, apply in the criminal?" See also the case of *The State v. Wm. H. Heath*, recently decided in the Court of Appeals of St. Louis county, Mo. In that case the defendant was auditor, and as such had charge of the bonds and mortgages given to secure the money loans of the schools, but the money was payable to and receivable by the treasurer. Still, for several years the money was actually received by him, and the county court allowed him compensation for his services in the matter. He embezzled these funds, and it was held that he might be convicted of embezzling public funds received by him as agent of the county. The actual relation of principal and agent was held sufficient; the existence of a legal relation was unnecessary.

We are of opinion that the argument of the state is the better, and that the ruling of the district court must be sustained. We intend no departure from the views expressed in the case of the *Hartford Ins. Co. v. The State,* supra. We do not affirm that the city was concluded by the defendant's acts, nor indeed that any one is estopped but himself. But we hold that when one assumes to act as agent for another, he may not, when challenged for those acts, deny his agency; that he is estopped not merely as against his assumed principal, but also as against the state; that one who is agent enough to receive money, is agent enough to be punished for embezzling it. An agency *de facto,* an actual even though not legal employment, is sufficient. The language of the statute is, "If any officer, agent, clerk, or servant of any incorporation, or any person *employed in such capacity."* (Crimes act, § 88.)

Further, that the defendant received this money as the money of the city, is conclusively as against him shown by his issue of the license, for he was authorized to issue that only after the city had obtained possession of the money. The issue was an affirmance by him that all things preliminary thereto had been performed, among which was, that the title to the money had passed from the licensee to the city — an affirmance which he might not thereafter deny. This is not the case of a single or an occasional payment by a debtor of the city to an officer thereof of his debt, where such officer is charged with no duty springing out of the receipt by the city of its debt, and is not the legal custodian of the city's moneys. Thus the officer might be, to the common understanding of all parties, simply the agent of the debtor, acting merely to accommodate him. Here, by settled course of business, payment of the city's dues was made to and received by the defendant. While such payment might not legally conclude the city, yet the evident understanding of all, the defendant included, was, that payment had actually been made; that the money was now the property of the city; and that the license for which the money was due, might properly

issue: and it was issued, and by defendant. He voluntarily assumed full charge of this entire matter, including the receipt of the money and the issue of the license. The money was paid to him because of his office, and to induce his official action; and he may not now say that it was not received "by virtue of his employment or office," or that its receipt was not one of the prescribed legal duties of such office. In the case of *Regina v. Orman*, 36 Eng. L. & Eq. 611, it appeared that defendant was employed in the service of the justices of Bedfordshire as storekeeper and clerk of the prison, under the governor of the county jail, and on his appointment received written instructions, in which nothing was said about the receipt of money. His duty was to keep an account of sales and make out bills of parcels and receipts. The governor usually received the money, but in his absence the defendant sometimes did. In such case, the course of business was, to enter the receipt on the same day, and hand the money to the governor. It was held that he might be convicted of embezzling this money, as the money of the justices. Jervis, C. J., said: "If he was *de facto* employed to receive money, it does not matter whether the rules or instructions defined the employment or not." So it may be said here, that if defendant was *de facto* employed to receive this money, it matters not to him whether the ordinances prescribed that as his duty or not. He may not enter into the employment, and then deny its terms or responsibilities. He is estopped from saying that this money which he embezzled is not the money of the city.

We see nothing in the rulings of the district court materially prejudicial to the rights of defendant, and therefore the judgment must be affirmed.

All the Justices concurring.