## SOUTHERN DEPARTMENT — CENTRAL DIVISION.
## OCTOBER TERM, 1895.

### THE STATE OF KANSAS v. E. BANE.

1. CONTINUANCE—*Sickness of Attorney.* An application for a continuance on account of the sickness of an attorney employed to defend a party against a criminal charge in an indictment is within the sound discretion of the trial court, and a refusal to grant it on that account is not cause for a reversal of the judgment of conviction.

2. JUROR, *Not Disqualified.* A person who has heard detailed statements of occurrences in relation to the commission of a criminal offense charged in an indictment, but who has not formed or expressed an opinion in relation to the guilt or innocence of the person charged with the crime or some material fact involved in the charge, is not disqualified to sit as a juror on the trial of such indictment.

3. EXAMINATION OF WITNESS—*Immaterial Questions and Conclusions.* The court should confine a witness in his examination to such facts only as are within his own personal knowledge, and he should not be permitted to give his conclusions arrived at from his observations. Ordinarily, it is error for the court to permit an attorney, in the examination of his own witness, to ask him leading questions as to material matters involved in the issue being tried; but to permit a witness to state his own conclusions about immaterial matters, or to permit counsel to ask leading questions in relation to matters that are immaterial, is not a reversible error.

4. INTOXICATING-LIQUOR LAW—*Incompetent Evidence.* In the trial of a person charged with selling intoxicating liquors in violation of the prohibitory law, it is not competent for the court to allow the defendant to prove, by way of defense, what another person had said or done in the place where intoxicating liquors were being sold, or what efforts such person had made to employ the witness to attend bar for him in that place.

5. ——— *Prosecution—Correct Instructions.* Where the court instructs the jury as follows: "To authorize a conviction upon all

the counts relied upon by the state, the jury must believe from the evidence, beyond a reasonable doubt, that the defendant made all of the sales claimed by the state; and the evidence must prove, beyond a reasonable doubt, either that the defendant made the sales in person, or that they were made for him by his duly-authorized clerk, employee, or agent, and with his knowledge and consent, and the evidence must prove also that the liquors sold were intoxicating. It is the duty of the jury to find a verdict of 'not guilty' upon every count to which you entertain a reasonable doubt, and a verdict of 'guilty' as to every count upon which you have no reasonable doubt. Beer and whisky and all fermented liquors are presumed to be intoxicating without proof of their intoxicating qualities, and if you find from the evidence, beyond a reasonable doubt, that the defendant, or his agent acting for him and with his knowledge and consent, sold beer or whisky or other fermented liquors, by whatever name called, you will be authorized in finding that all such liquors were intoxicating, as no evidence has been introduced to the contrary." *Held*, That the court instructed the jury correctly on the law.

MEMORANDUM.—Error from Reno district court; F. L. MARTIN, judge. Prosecution and conviction for violation of the prohibitory-liquor law. The defendant, Bane, brings the case to this court. Affirmed. The case is fully stated in the opinion, filed October 23, 1895.

*H. Fierce*, for appellant.

*F. B. Dawes*, attorney general, *L. M. Fall*, county attorney, and *Z. L. Wise*, deputy county attorney, for The State.

The opinion of the court was delivered by

JOHNSON, P. J. : The appellant, E. Bane, was indicted by the grand jury of Reno county, in the district court sitting within and for said county. The indictment contains 33 separate counts, each charging him with selling and bartering spirituous, vinous, fermented and other intoxicating liquors without having procured from the probate judge of said

county a permit to sell intoxicating liquors, in violation of § 386, chapter 31, General Statutes of 1889. The indictment was returned by the grand jury on the 13th day of March, 1895. The defendant was arrested on a warrant issued by the clerk of said court on said indictment, and on the 2d day of May, 1895, filed his motion and affidavit for a continuance of the case to the next term of said court, for the reason that the attorney whom he had employed to defend him against the charges contained in said indictment had, since his employment, been taken sick, and was then physically unable to appear in court; that he was the sole attorney employed for the defense; that he had stated fully to him his defense to the matters contained in the indictment, and that he could not safely proceed to the trial of his cause without the presence of said attorney to conduct his defense; that he did not believe any other attorney in the county could conduct his defense in said case so as to give him a proper and efficient defense against the charges made against him in the indictment, his said attorney being familiar with his business transactions and familiar with the grounds of defense; that his attorney was confined to his room, but that he believed he would be able to defend him at the next term of the court. His application was overruled, and defendant excepted. This is the first error complained of.

An application for a continuance on account of the absence or disability of an attorney is addressed to the sound discretion of the court. The affidavits on the part of the defendant show that he had knowledge several days before the case came on for hearing that his attorney was sick and would be unable to appear in court and defend him against the charges contained

in the indictment; that he had ample time to procure other counsel to defend him before the time the case was set for trial. He had not used due diligence in preparing his defense after having knowledge of the sickness of his attorney, and the court did not abuse its discretion in overruling and denying his application for a continuance.

The second matter assigned as error was in the overruling of objections to the competency of certain persons to sit as jurors in the trial of the case. The first juror challenged for cause was Fred. Scrosby. In his examination on his *voir dire*, he said:

"I know Mr. Bane when I see him. I have heard persons say Mr. Bane was engaged in selling intoxicating liquors; could not say when I heard it; could not say whether it was within the last year, or not; I heard a rumor was all; what I heard causes me to believe that he was engaged in that business. I have an opinion; I do not know whether it would require evidence to remove it; could not hardly say that it would. I would just as soon have a person in the same frame of mind as I am myself to sit on a jury in case I was charged with a similar offense. No, I have no fixed opinion; I understand a fixed opinion is one that would take evidence to remove."

Ques. "Did you believe what you heard?" Ans. "It was just a rumor; I could not tell where I heard it."

Q. "Did you believe it?" A. "Yes, sir; I guess I did. I still believe it; believe that Bane has been engaged in the sale of intoxicating liquors; my belief is grounded by what I heard; I have not heard anything that would change my mind; do not know how often I have heard anything about the matter. I don't know anything about it; I could not tell when I heard anything about it; when or how I heard anything about it."

Appellant also claims that the court erred in over-

ruling his challenge for cause of juror, L. C. Pound. This juror, in his examination as to his qualifications, said :

"I know defendant when I see him ; simply a passing acquaintance. I have heard what he is charged with.; heard he was charged with selling intoxicating liquors ; have heard nothing about the case ; have no opinion ; have not heard any person say whether or not he was engaged in selling intoxicating liquors. I have heard it rumored ; nothing else but rumor ; have heard no evidence on the question of fact as to whether he is selling or not ; have formed no opinion from the rumors as to whether he was selling or not. I have no opinion based on the evidence ; have no fixed opinion based on rumor. I think the rumors I have heard would not produce any influence on my mind ; I could try this case fairly and impartially on the evidence in this case ; will be guided solely by the evidence. I understand that the defendant is presumed to be innocent of every charge against him until he is proven guilty. Would not consider from the fact that he had been indicted by the grand jury as any evidence against him ; would consider him innocent until the state produced witnesses in open court to prove his guilt beyond a reasonable doubt. If I had any reasonable doubt of defendant's guilt, would find a verdict of not guilty. Do not think the penalty fixed by the prohibitory law too severe ; have no feeling for the prohibitory law or any bias or prejudice against it."

On examination by counsel for the defendant, the juror, among other things, said :

"I know Mr. Bane ; I have no particular acquaintance with him."

Ques. "Whom did you ever hear say anything about the question as to whether he had been selling intoxicating liquors?" Ans. "I do n't know anything in particular ; it is just a rumor on the street ; street talk ; I heard such talk last year."

Q. "Did the parties with whom you talked state what they understood about the facts in regard to the

matter?" A. "No, sir, I never talked with anyone about it; well, I do n't know that anyone ever talked with me. It was just a general rumor that I would hear — some talk on the street; was acquainted with the parties I heard talking on the street; I guess I believed what I heard them say; I have not heard anything to remove the belief from my mind; they were talking about Bane selling liquor; what they said did not cause me to believe one way or the other. I do n't remember any definite talk that I overheard, more than Bane run a 'joint,' or something to that effect; I believed it like anything else I heard; I still think so; it would require evidence to remove the belief upon that point; if permitted to sit as a juror, I would start in believing that fact; would still believe it until I heard some evidence to remove it. I understand by the term 'joint' a place where intoxicating liquor is sold in violation of law. That belief is not firmly fixed; I mean by firmly fixed, that it is not fixed but that evidence would remove it; it would take evidence to remove the belief."

Upon this examination, counsel for the defendant challenged the juror for cause, and thereupon the court further examined the juror, and the juror, in answer to interrogatories propounded by the court, said:

"I know nothing about this matter but mere rumor; I have no fixed or settled opinion; most generally believe when there is much talk there is some truth, that is about the extent of it. I have no opinion that would prevent me from fairly considering all the testimony in the case. I think I can try the case according to the law and the evidence; nothing to prevent me from being guided solely by the evidence."

Upon the whole examination of this juror, the court overruled the challenge for cause. Section 205 of chapter 82, General Statutes of 1889, reads: "It shall be a good cause of challenge to a juror that he

has formed or expressed an opinion on the issue or
any material fact to be tried.'' We are unable to see
wherein either Fred. Scrosby or L. C. Pound had
formed or expressed an opinion as to the guilt or in-
nocence of the appellant, Bane, or any material fact
involved in the charge. They each knew him by
sight; neither of them was personally acquainted
with him; they had each heard persons talking
about his keeping a ''joint;'' neither of them had
engaged in conversation talking about it, nor had
any of the persons who were talking about it ad-
dressed their conversation to either Scrosby or
Pound; they had simply heard persons on the
street talking of it in a casual manner; neither of
them remembered whom they had heard speak of
the matter, or what they had heard them say about
it. Each of these parties testified that he would not
be influenced in his verdict by anything he had heard
in relation to it, and could go into the jury-box and
try the case fairly and impartially upon the evidence,
uninfluenced by anything he had ever heard; that
he had no bias or prejudice in the matter. Neither
of them knew anything personally about the matter
charged in the indictment. Each of them had a
belief based on the street rumor; but, taking the
examination of these persons as a whole, it does
not show that they knew anything about the facts
charged, or had formed or expressed any opinion that
would render them incompetent as jurors. In the
case of *Roy v. The State*, 2 Kas. 409, BAILEY, J., de-
livering the opinion of the court, says :

''If no person were to be deemed a competent juror
who had listened to statements more or less detailed
from a woman or had read such statements in a news-
paper, we apprehend that it might frequently result

in a complete failure of justice, from the extreme difficulty of finding jurors. This court cannot hold as a matter of law that a person summoned as a juror is disqualified to sit as juror in a criminal case from the mere fact that he has listened to statements from his neighbors purporting to be a detail of the occurrence, which is all that appears in this case. Authorities on this point are too numerous to leave any doubt of the competency of the juror.''

In the case of *The State v. Medlicott*, 9 Kas. 279, KINGMAN, C. J., delivering the opinion of the court, says:

''The rule adopted by our statute has so frequently been the subject of judicial comment as to leave little room for useful extended observations. Although Anderson at first stated that he had an opinion, upon further questioning it appeared clearly that it was an impression only, and that the impression depended on the newspaper account of the truth of which he had no knowledge. We think there was no error in overruling this challenge for cause in this case. An impression is not an opinion, and is not made cause for challenge by the statutes.''

In the case of *The State v. Spaulding*, 24 Kas. 4, opinion by BREWER, J., the court says:

'' The juror testified that he had an opinion, founded upon rumor, that public money was missing; that he had no opinion as to the guilt or innocence of the defendant, and that he believed defendant was city clerk. Another, that he had an opinion that public money was lost or stolen; that he had, on reading of the matter, made no inquiry whether it was true or false; and that his opinion would not influence him in any way in the trial of the case; and that he could give due consideration to the testimony. A third gave substantially the same answers to the questions put to him. Within the rule laid down in the *Medlicott Case*, 9 Kas. 257, we think the challenges were properly overruled. It does not appear that either of these

parties had such settled opinions or convictions as would prevent them from being impartial jurors.''

The third assignment of error is, that the court erred in overruling objections to certain questions propounded to witness S. D. McCurley, for the reason that some were leading and some called for conclusions of the witness. The witness testified that he had been in the appellant's place of business a number of times, describing its location; that he had seen defendant in there several times, and had bought whisky of him several times; that he could n't tell how often he had bought of him, but fixed it at six times; that he had bought from other persons in there; that he did not know who they were, but described two persons who were in there making sales — one a tall man and the other a short, thick man; that he did not know their names; that sometimes Bane himself had set up the liquor — beer or whatever was called for; that he had bought several times from the tall man whisky and beer; that it was difficult to name the persons who were present when he bought of the tall man; that he had seen Mr. Bane in there frequently. After this testimony, the county attorney propounded certain questions to the witness as to his seeing Bane in there when he bought liquor from the other parties, and as to whether they were acting as clerks there, and the witness said that he did not know whether he was clerk or not. The county attorney then asked the witness whether Bane saw him buy the liquor. This was objected to, and the court overruled the objection; but witness did not answer that question, and to the next question he said that he saw him frequently in the room but did not know what he was doing there; that sometimes he was behind the counter and sometimes he was not;

35—APP.

that his impression was that Mr. Bane was "chief cook;" that he thought he was proprietor of the institution; that he seemed to be "general manager." The witness was examined at great length, and testified to what he saw there. and what occurred in Bane's place of business without any objection, but when he was asked in relation to what Bane was doing in there, and whether the parties in there were clerks or not, and the inference the witness drew from what he had seen there, the defendant objected.

We think some of these questions were leading, and some of the answers of the witness were conclusions that should have been drawn from the evidence by the jury, but none of these questions or answers were material after the witness had detailed fully all the particulars in relation to the purchase of liquors from Bane and sworn that it was his place of business and that he was frequently in there setting up liquors — sometimes behind the counter and sometimes not. These are all facts within the knowledge of the witness, and were testified to by him. We do not think that there was any prejudicial error committed by the court in permitting the witness to answer the questions objected to by appellant.

The fourth error complained of by appellant was in sustaining certain objections to testimony offered by him in his defense. Counsel for defendant, in stating his defense at the close of the testimony for the state, said:

"The testimony in this case will show that Mr. Bane has been running a restaurant in the building; that has been testified to here by witnesses for the state; and that his restaurant is in the front part of the building, and that that is the only thing he has had to do with it from first to last; that probably, as a matter of fact, he did go back and forth through the

building or room in which the 'joint' was kept, and has been around in there as a man ordinarily would under such circumstances, but that he had nothing to do with the selling of either beer, whisky, or any other intoxicating liquors. We deny *in toto*, and we expect to show to you, that it is true that this 'joint' was run in there by a man by the name of Sampson, as has been testified to here, but whether he was proprietor himself or was working in the employ of this man Cathary, as has been testified to, we know not, but that he assumed to be the proprietor, and to all appearances was the proprietor. That is the nature of our defense briefly stated."

After statement of the nature of the defense by counsel for the appellant, he placed a witness by the name of Malcolm Mitchell on the stand, and proceeded to examine him with reference to the location of the place where the liquors had been sold and his frequent visits to the place where the "joint" was kept. After showing by him that a man by the name of Sampson was in there as bartender, selling intoxicating liquors to customers whenever they called for them, and that witness had never seen Bane in there serving customers with drinks, the following question was asked the witness: "You may state whether or not there was any effort made by Mr. Sampson to employ you to act in the capacity of bartender there." A. "Yes, sir." The state objected to this question as incompetent, irrelevant and immaterial, and the court sustained the objection and directed the answer to be stricken out. To the ruling of the court the defendant excepted. The next question, "You may state, Mr. Mitchell, who assumed to be proprietor and owner of that 'joint' at the time you went in there," was objected to as incompetent, irrelevant and immaterial. The objection was overruled by the court, and the witness answered, "I thought Mr. Sampson was; anything I wanted I got

from Sampson.'' Q. ''Do you know if Mr. Sampson, while he was running that 'joint,' or engaged in the sale of intoxicating liquors in that 'joint,' made any effort to employ any individual to attend the bar for him?'' The state objected as incompetent, irrelevant and immaterial. The objection was overruled by the court. The witness answered: ''Yes, sir;'' and the witness was permitted to answer all the questions in relation to what his impressions were in relation to who was the proprietor of the ''joint.''

We do not think that there was any error in the court sustaining the objection to the one question as to Sampson's effort to employ the witness as a bartender, when the witness was permitted afterward to give his impression as to who was the proprietor and manager of that ''joint.'' It certainly was not competent for the defendant to prove what effort Sampson had made to employ him as a bartender. It was immaterial what Sampson had said or done in relation to employing another to attend bar in the ''joint.'' All the facts in relation to the manner in which that ''joint'' had been run were fully testified to by all the witnesses for the state, as well as the witnesses for the defense, and it was a question of fact for the determination of the jury as to whether the appellant had been guilty of making sales of liquor at the place charged in the indictment against him.

The fifth error complained of is the giving of the third and fourth instructions to the jury:

''3. To authorize a conviction upon all the counts relied upon by the state, the jury must believe from the evidence, beyond a reasonable doubt, that the defendant made all of the sales claimed by the state, and the evidence must prove, beyond a reasonable doubt, either that the defendant made the sales in person, or that they were made for him by his duly-

authorized clerk, employee, or agent, and with his knowledge and consent, and the evidence must prove also that the liquors sold were intoxicating.    It is the duty of the jury to find a verdict of 'not guilty' upon every count as to which you entertain a reasonable doubt, and a verdict of 'guilty' as to every count upon which you have no reasonable doubt.

"4.  Beer and whisky and all fermented liquors are presumed to be intoxicating, without proof of their intoxicating qualities, and if you find from the evidence, beyond a reasonable doubt, that the defendant, or his agent, acting for him and with his knowledge and consent, sold beer or whisky or other fermented liquors, by whatever name called, you will be authorized in finding that all such liquors were intoxicating, as no evidence has been introduced to the contrary."

It is urged by appellant that these instructions were not authorized under the evidence in this case, and that there was no competent testimony on the trial of the case tending in the remotest degree to establish any agency or employment of the parties that were selling beer and whisky in the "joint."    At the conclusion of the evidence for the state, at the request of the appellant, the court required the county attorney to elect upon which counts he relied for a conviction, and upon what testimony he relied to support each count.    After the county attorney had made his election and stated the evidence upon which he relied for a conviction upon each separate count, the defendant's counsel, in stating the defense to the several counts in the indictment, admitted that there was a "joint" being run in the rear room of the building occupied by defendant as a restaurant, but denied that the defendant was the proprietor, or that he had anything to do with carrying on the business or selling intoxicating liquors therein.    The evidence shows several sales of whisky and beer made directly

by the appellant, and sales made by other parties in the "joint" in the presence of him ; that it was known as Bane's place ; that he was around the room during most of the time ; that he paid the rent on the building ; that he was in the building selling liquor when it was all in one room ; that a partition was afterward put in and the building divided into two departments, and that he afterward put the restaurant in the front room. His conduct in paying the rent and his constant presence about the "joint," making sales to different parties, being behind the bar and in the room, sufficiently indicated his proprietorship of the "joint;" and with all these facts before the jury we think the instructions were authorized by the evidence, and that they stated the law correctly in this case. The jury found the defendant guilty upon 17 counts in the indictment, and not guilty on 16 counts.

The final contention of counsel for the appellant is, that there was not sufficient evidence on which to base the verdict of the jury of "guilty" on 12 of the sales testified to as having been made by persons other than the defendant, and therefore that the court should have sustained the motion for a new trial as to the counts upon which defendant was convicted for said 12 sales. We have examined the evidence in this case with great care, and are satisfied that the case was fairly tried ; that there was no error committed in the admission of the evidence ; that the court instructed the jury correctly on the law applicable to this case, and we think the verdict of the jury is in accordance with the evidence. The jury had all of the witnesses before them, heard their evidence and saw their demeanor on the witness-stand. It was their province to weigh the testimony and determine

the credibility of each witness, and having returned their verdict, which is sustained by abundance of evidence, it was not error for the court to refuse to set aside the verdict as to the 12 sales, or as to any part of them.

The judgment of the district court is affirmed.

All the Judges concurring.