Price, J.
The record in this case shows exceptions to the giving of two special charges to the jury, at the request of the accused, and also that the state excepted generally to the charge given.
We have examined these special .charges, as well as the general charge, and our voyage has not discovered substantial error in either the general or special charges. IS!or have counsel for the state pointed out. any error in these respects, and we are inclined to assume that but little, if any, confidence is reposed in such exceptions.
The only important question in the case, is: Did the trial court err in sustaining the motion in arrest of judgment?
To answer that question intelligently, reference *431 must be bad to the indictment upon which the accused was tried, and the statute and ordinance under which the same was found and prosecuted.
The first count, and the only one we consider, alleges, after the formal part, “that Bennett Carter on the twenty-ninth day of May, in the year nineteen hundred, with force and arms, at the county of Hamilton aforesaid, being then and there a public officer, to-wit: being clerk of the village of Madisonville, a municipal corporation duly organized under the laws of Ohio, and situated in the county of Hamilton, and said Bennett Carter, being then and there charged with the collection, receipt, safe-keeping and transfer of public moneys, belonging to said municipal corporation under and by virtue of the following ordinance of said municipal corporation, to-wit: (Here follows a copy of the ordinance set out in the statement of this case), certain of said money, to-wit, the sum of three hundred and thirty-five dollars and eighty-seven cents, of the public moneys, belonging to said municipal corporation aforesaid, did unlawfully and fraudulently embezzle and convert to his, said Bennett Carter’s own use, which said moneys had then and there come into the possession and control of him said Bennett Carter, by virtue of his said Bennett Carter’s office as such clerk as aforesaid and in his discharge of the duties thereof as aforesaid, * * * contrary to the form of the statute,” etc.
It is asserted for the state that the foregoing indictment is authorized by Section 6841, Revised Statutes, which for the purposes of this case, may be abbreviated to read as follows:
“Whoever, being charged with the collection, receipt, safekeeping, transfer or disbursement of the public money * * * belonging to any municipal *432 corporation, converts to his own nse * * * any portion of the public money, or other property, bonds, securities, assets, or effects of any kind, received, controlled, or held by him for safekeeping, or in trust for any specific purpose, transfer, or disbursement, or in any other way or manner, or for any other purpose, shall be deemed guilty of embezzlement,” etc.
It appears beyond question, that the moneys which came into the possession and custody and keeping of Carter, while he was village clerk, were moneys which he had collected and received under the provisions of the ordinance above set out, and not in the discharge of any purely statutory duty imposed upon him; and if the ordinance is valid and such as the statute authorized the village council to pass, then the duties imposed upon the clerk were legal duties, and he was legally “charged” with the collection, receipt, safekeeping, transfer or disbursement of the “public money” of the village which he collected and received from the lot and landowners in payment of their sewer assessments made under the ordinance.
The second section of this ordinance, if valid, required the lot and landowners, within a certain time, to pay their assessments to the clerk of the village, and if the payments should not be made within that period, the clerk should forthwith certify all unpaid assessments to the county auditor, to be by him placed on the tax duplicate and collected by law.
By the third section, the assessments, when collected should be paid into the debt fund, to be applied to the cost and expense of constructing the sewer.
In the method thus provided, Carter, the village clerk, came into possession of the funds he was charged to have embezzled, and the trial court held *433 that the indictment stating such a case, failed to charge a crime.
If the village council had no authority to adopt this mode of payment and collection of the sewer assessment; no power, by ordinance to impose upon the ■clerk the duty of receiving and collecting the assessments, the decision of the lower court might be plausible.
So, the case depends upon the virtue and vitality of the ordinance, and in the consideration of it, we are ■not unmindful of the fact, that in Ohio, municipal' corporations have only such powers as are delegated to them by charter, or the statutes enacted for that purpose.
If the power to pass by-laws or ordinances is conferred by a law in general terms, without enumerating their subjects, the municipal council could pass any ordinance to govern and regulate its own local affairs, subject to the limitation, that it must not conflict with the constitution and laws of the state, or contravene public policy.
But, in Ohio, the powers of such corporations are enumerated, and the subjects of municipal legislation are declared in Section 1692, Revised Statutes, the substantive paragraph of which is:
“In addition to the powers specifically granted in this title, and subject to the exceptions and limitations in other parts of it, cities and villages shall have the general powers enumerated in this section, and the council may provide by ordinance for the exercise and enforcement of the same.”
And in sub-section 21, the council is empowered “to open, construct and keep in repair sewers, drains and ditches.”
We have in this-section general powers enumerated *434 therein, one of which general powers is to open, construct and keep in repair sewers, etc., and also the-grant “that the council may provide by ordinance for' the exercise and enforcement of the same.”
Other provisions of the statute prescribe the mode of assessments for sewer construction and repairs, and the authority conferred upon the city or village is general but ample, to authorize the village of Madison-ville to adopt the mode of assessment contained in the ordinance before us. The validity of that portion of the ordinance is not in question in this case. It was upon a purely local subject, and within one of the enumerated powers of the council.
But does the power of the council end there? Or, can it “provide by ordinance for the exercise and enforcement of the same?” The above section says it may, and if the mode of the collection of the assessments is within the clause “for the exercise and enforcement of the same,” it was competent for the council to select and adopt the method prescribed fn sections 2 and 3 of the ordinance. The collection was but an incident in the exercise of the power expressly conferred, and to enforce the collection of such assessments, the council might pass the ordinance in question.
The clerk was an officer of the village and not of the state, and while his general duties are defined by statute, it is within the legitimate exercise of municipal authority to add other duties, which are not inconsistent with the statutory duties, and which relate solely to the local affairs of the corporation. And we regard the provision in question, that the lot owners should pay their assessments to the clerk, and that he should pay them into the debt fund to discharge the expense of the sewers, as an incident to the exercise of *435 the power of assessment for sewer purposes which is-expressly granted: The legislature has not undertaken to prescribe the rules for every detail that is incident to construction of sewers and the enforcement of payment of the assessments, but has furnished the general outline, leaving to the municipal council the working out of the details. Prescribing the method of collection of the assessments, was one of the details and incident to the exercise of the general power.
This doctrine is well stated by Throop on Public Officers in section 542 under title of “officers’ implied and incidental powers,” as follows: “The rule respecting such powers is, that in addition to the powers expressly given by statute to an officer or a. board of officers, he or it has, by implication, such additional powers as are necessary for the due and efficient exercise of the powers expressly granted, or as may be fairly implied from the statute granting the express powers, * * * .”
The author furnishes apt illustrations of the proposition, and cites several cases in its support.
In “Dillon’s Municipal Corporations,” in a note to-section 308, it is said: “Where the power to do certain acts or pass certain ordinances is conferred upon the council, but the particular mode of exercising the power is not prescribed, this may be done by ordinance, and any mode may be adopted which does not infringe the charter or general law of the land.”
There is some authority on the same point in The City of Cincinnati v. David Gwynne, 10 Ohio, 192, where the holding is stated to be that, “an ordinance of the city council requiring the mayor to enforce the collection of a special tax by suit, in the nature of an *436 action of debt, does not violate the city charter, or the general law of the land.”
The then charter of that city conferred no civil jurisdiction upon the mayor, but did enumerate other jurisdiction and powers, and the spirit of the decision is, that where the mode of collection of the tax was not expressly provided by the charter, the council might by ordinance provide the manner of collection.
So far, we have discussed the question involved in the light of the express authority given municipal corporations by the principal and granting clause of Section 1692, Revised Statutes, and the powers necessarily incident to the exercise and enforcement of that authority.
We now pass to another section of the statute, to inquire what bearing it may have on the pending controversy.
Section 2693, Revised Statutes, provides, that,— “nothing in this chapter shall be construed to prevent any corporation that may elect to do so, from levying and collecting taxes, as authorized by this title, within the corporation; and when any corporation elects to levy and collect such taxes, the council shall provide by ordinance, for the appointment and control of the necessary officers to carry the same into effect; which officers shall have the power, and be under all the restrictions of county auditors, county treasurers, and township assessors so far as the same are applicable to them, except in the sale of delinquent lands.”
This seems to be a general provision in Chapter 1 of Title 12 of the municipal code. Chapter 1 of Title 12 is upon the subject of finance and taxation, fixing the rates of levies, etc. And Title 12 embraces the entire municipal code. So, that sewer taxes are authorized in this title, and the corporation may elect *437 as to the manner of collection of such taxes as are within the corporation. The section (2693) authorizes the council to select and appoint- by ordinance the officer or officers to levy and collect such taxes. This section in its present form has been a part of the-municipal law since the adoption of the revised code-passed May 7, 1869, and w-hile its authority may not. often be exercised by municipal corporations in the particular manner permitted, yet it seems to clothe them wdth ample power to manage and control matters of purely local taxation.
In the case before us, the ordinance might well be defended under this section, if it lacked sanction of authority under any other provision of the statute.
The village clerk was selected as the officer to receive payments of the assessments, and this was done by ordinance, the regularity of the passage of which is not questioned in the record.
There is another and broader view to be taken of this case, and it stands on more than a statutory plane.. It rests upon our sense of w'hat is right, and that just; and proper regard for obligations wffiich an officer voluntarily assumes to the public.
Carter, the village clerk, availed himself of the provisions of the ordinance so far as to receive from the village taxpayers sums of money wdiich they were required to pay within a certain period to avoid certification of the same by him to the county auditor.. He did this under at least a colorable authority, and gave receipts as the clerk of the village. Is it any defense to his embezzlement of these funds for him to say the ordinance is invalid? By its provisions; he agreed and undertook to be the servant and agent of the village in collecting and disbursing these assess *438 ment funds. He discharged that part of his engagement which relates to the collection of the moneys, and after pocketing the same, he asserts that there is no valid law to punish him for embezzlement. Such a defense is brazen, if nothing more.
Some courts have denied such a defense on the doctrine of estoppel, which they are willing to apply to this class of crimes, as well as in civil actions. This seems to be the opinion of Bishop in his New Criminal Law, section 364, and of the courts in State v. Spaulding, 24 Kan., 1; and State v. O’Brien, 94 Tenn., 79.
We do not think that the doctrine need to be denominated estoppel to have its rightful place in such cases. If the ordinance was recognized by the clerk as sufficient authority for him to obtain control and possession of the public money, he acted upon it as a valid ordinance, the same as did the lot owners in paying to him their assessments. If it was sound enough to enable him to receive the money, it was sound enough to “charge” him with its safe-keeping and disbursement; and if so “charged,” and he converted the funds to his own use, he is guilty of embezzlement. “If he was officer enough to receive the money, he was officer énough to be punished for -embezzling it,” — as said fry the court in one of the above cases.
Wharton on Criminal Law, Vol. 2, section 1920, ¡states the rule thus: “While the reason of the thing requires that the money embezzled should have been received by the defendant within the orbit of his employment, yet where he succeeds in getting the money on the basis of such employment from third parties, and when there is a legal duty resting on him to pay over such money to his employers, then the embezzlement of such money is within the statute.”
*439 The State v. Spaulding, 24 Kan., supra, and The State v. O'Brien, 94 Tenn., supra, are only some of the decided eases which support the proposition. Other cases are cited therein.
This court has not been silent on this subject.
In the State of Ohio v. Pohlmeyer, 59 Ohio St., 491, it is seen that the accused in that case, had been ■employed as the agent of The W. L. Douglas Shoe •Company, a corporation organized under the laws of Massachusetts. It was charged in the indictment that as such agent, Pohlmeyer received certain money in the course of his employment, which he embezzled. ■On the trial the accused called and proved by the Secretary of State, that The W. L. Douglas Shoe Co., had not complied with certain laws of Ohio by filing ■certificates as required before it could lawfully do business in Ohio. The business done by'•the agent was therefore illegally done. The court for this rearson directed a verdict of acquittal, instructing it that the accused could not be the agent of the company. On considering the exception to this decision of the trial court, this court said on page 495: “The sections clearly disclose the purpose of the general .assembly that foreign corporations shall be put on the same footing with domestic corporations with respect to fiscal burdens, to the business which they may carry on in the state and to service of judicial process within the state. They do not disclose a purpose * * * to make booty of the property of a corporation which does not comply with the provisions of the act * * * . And the rule that one who receives money or any other thing of value in the assumed exercise of authority as agent for' another, is estopped thereafter to deny such authority, applies in criminal prosecutions as well as in civil actions.” *440 The application of the foregoing to this case is apparent.
We have no doubt that the trial court erred in sustaining the motion in arrest of judgment.'
We do not have the question of liability of the sure' ties on the bond of the clerk, for moneys collected under an ordinance passed either before, or after the execution of the bond, and in what has been said in this opinion, we do not pass on such probable or possible question.

Exceptions sustained.

Burket, C. J., Spear, Davis, Shauck and Crew,, JJ., concur.