SCHOOL DISTRICT No. 80 v. WILLIAM BROWN *et al.*
No. 12.

SCHOOLHOUSE—*Authority to Erect—Liability of District.* The officers of a school district cannot by contract create a district liability for the building of a schoolhouse, unless they have been first legally authorized so to do, on a site selected and out of the funds provided for that purpose by the electors of the district.

MEMORANDUM.—Error from Graham district court; CHARLES W. SMITH, judge. Action on contract by William Brown and Willis Jackson, copartners as Brown & Jackson, against School District No. 80, of Graham county, Kansas. Judgment for plaintiffs, and defendant brings the case here. Reversed. The material facts are stated in the opinion, filed January 9, 1896.

*F. D. Turck*, for plaintiff in error.

*G. W. Jones*, for defendants in error.

The opinion of the court was delivered by

GARVER, J.: The defendants in error, Brown & Jackson, brought this action in the district court of Graham county to recover from School District No. 80 in said county the contract price for the building of a schoolhouse in said district. The petition alleged the making of a contract with the district board, and the construction in accordance therewith of a schoolhouse by defendants in error. The liability of the school district is the sole question presented by the record.

Having only limited authority in a matter of this kind, the officers of a school district can only carry out the expressed will of the electors of the district. If they act without such direction, or exceed the power

conferred upon them, their action does not bind the district. They have no inherent power as a board to build a schoolhouse, or to create any district liability in a matter that is committed by the statute exclusively to the qualified voters of the district. (Gen. Stat. 1889, ¶ 5587.) This statute also confers upon the electors of a school district the exclusive right and power to select a site for the district schoolhouse. After the voters of a district, at a meeting duly called, have selected a site for the schoolhouse, have determined what kind of a house they will build, and have provided funds for that purpose, the district board, as mere agents, may carry out the will of the inhabitants of the district so expressed. (Gen. Stat. 1889, ¶ 5614.) Where, when and how a schoolhouse shall be built, having been thus first decided at a district meeting, such determination becomes the measure of authority which the board may thereafter exercise in that matter. Any one dealing with the board is bound to take notice of the limitations of its authority. Hence, in order to base a recovery upon a contract entered into with a school board, such as alleged in this case, it must be shown that the contract was authorized by the voters of the district. (*School District v. Perkins*, 21 Kan. 536; *Wilson v. School District*, 32 N. H. 118.)

Applying these rules to this case, we are unable to find in the record any evidence of authority in the district board to make the contract in question. The first district meeting of which we have any record was held February 26, 1889, pursuant to a call by the board. At that meeting a certain site for a schoolhouse was selected, and it was agreed to build a stone schoolhouse 19x30 feet in size. The site so selected was distant one mile south from the place where the board caused

a schoolhouse to be erected.   On March 15, 1889, there
was another district meeting, not shown to have been
legally called and held, at which time it was deter-
mined to change the site from the place selected at the
February meeting, and to locate the schoolhouse where
it was afterward built.   Another special meeting seems
to have been held May 4, 1889, at which it was voted
to change the site back to the first place selected.   A
majority of the voters were present at this meeting,
all voting for the original site.   We are not able to
say from the record that either the March or the May
meeting was legally called.   Moreover, there is noth-
ing in the record to show that, at either of these meet-
ings, the board was instructed to proceed to the erection
of a schoolhouse, or that any funds had been provided
for that purpose.   There is an intimation in portions
of the record that, at some prior meeting, bonds had
been voted for the erection of a schoolhouse, but there
is no evidence of that fact.   The district board, on
April 6, 1889, let the contract to Brown & Jackson
for the building of a schoolhouse on the site selected
at the meeting held March 15.   What this contract
was the record does not disclose, except that after the
work was done the board allowed their claim in the
sum of $399.65.   What the plans of the schoolhouse
were, or whether it was constructed in accordance
therewith, does not appear.   The building was com-
pleted in July, 1889, about the time of the annual dis-
trict meeting.   At the annual meeting in July, the
treasurer and clerk, who had been active in making
this contract, were succeeded in office by persons who
were in favor of the other site.   The new board re-
fused to recognize any liability of the district under
the contract made by the old board; hence this action.
We think no legal liability has been shown.

It is claimed that the evidence shows a subsequent ratification by an acceptance and use of the building by the district.  The only evidence of this is that the district clerk called the annual meeting to be held at this building July 25, 1889.  The inhabitants of the district assembled there, but, so far as their action is concerned, it shows a disaffirmance rather than a ratification of the action of the district board ; for at this meeting a resolution was adopted expressly directing the board "to make arrangements for a place to hold the next term of school."  There being no schoolhouse, schools had previously been held at different places, as arrangements therefor could be made with residents of the district.  The same course seems to have been pursued after the building of this house, and it was not used by the district for any purpose after the July meeting.  We do not think it can be said from this that the acts of the board were ratified by the district.

It appears that about May 1, 1889, the county attorney of Graham county began proceedings in the district court of that county, in the name of the state, to enjoin the district treasurer and clerk from paying out or expending any of the funds of said district for the erection of the schoolhouse contracted for with Brown & Jackson, alleging that the contract was unauthorized and void.  In February, 1890, that case was dismissed by the court, for the reason that the plaintiff had failed to comply with a previous order of the court allowing an amendment of the petition, and the making of Brown & Jackson defendants.  The proceedings in that case were pleaded by the defendants in error as *res judicata* as to the questions involved in this case, and as a conclusive determination of the validity of the contract.  We do not think they can

have that effect. The case was not tried upon its merits, neither was there identity of parties with the parties to this action.

For the reason that the evidence failed to show that the district board was authorized by the electors of the district to make the contract on which this action was based, the judgment will be reversed, and the case remanded for a new trial.

All the Judges concurring.