THE STATE OF KANSAS, *ex rel.* L. C. BOYLE, *Attorney General*, v. THE BOARD OF EDUCATION OF THE CITY OF TOPEKA.

**No. 11066.**

SCOTT, FORESMAN AND COMPANY v. THE BOARD OF EDUCATION OF THE CITY OF TOPEKA.

**No. 11069.**

SCHOOL BOARD OF CITY OF FIRST CLASS—*had no power to make contract for furnishing school books for period of years, and must obey text-book act of 1897, notwithstanding such contract.* Boards of Education of cities of the first class which are not bound by any arrangement for county uniformity of text books for the public schools, are not exempt from the operation of chapter 179 of the Laws of 1897, providing for the establishment of state uniformity of text books; and the fact that the Board of Education of the City of Topeka, prior to the publication of the law, entered into written contracts with certain publishers for furnishing text books to be used in the city schools for a period of

five years, constitutes no defense to an action of mandamus brought to compel the Board to introduce and use in the city schools the books adopted by the State Text-Book Commission. The board was without power to make such contracts, and they are void.

Original proceedings in mandamus. Opinion filed June 11, 1898. *Peremptory writ awarded.*

*L. C. Boyle,* for the State. *Quinton & Quinton* and *David Martin,* for plaintiff in No. 11069.

*Valentine, Godard & Valentine,* for defendants in error.

ALLEN, J. These actions were tried and submitted together. The questions involved in each case are substantially the same. Both were instituted for the purpose of compelling the Board of Education of the City of Topeka to introduce and use as school text books those selected and adopted by the State School Text Book Commission.

Chapter 179 of the Laws of 1897 (Gen. Stat. 1897, ch. 61), providing for the establishment of a uniform system of text books to be used in the public schools throughout the State went into effect on the nineteenth of March. The defendant has refused to adopt and use in the public schools of Topeka a part of the books selected by the State Commission. It claims the right to use other books, by reason of contracts entered into by the Board with certain publishers of school books prior to the publication of the School Text Book Law. All of these so-called contracts, except one, purport to have been entered into between the date of the passage of the act and its publication. It is argued on behalf of the plaintiffs that a number of these contracts were not, in fact, completed on the eighteenth of March, but it is unimportant whether they were or not. In the returns to the writs the con-

stitutionality of the law was challenged, but this contention was abandoned at the trial.

In order to understand the position of the defendant, it is necessary to briefly review the legislation on the subject of school text books. Prior to 1869, the law required certain branches to be taught in each school district, and also permitted the board, under certain conditions, to provide for the teaching of other branches; but no provision was made with reference to the selection of text books. By section 14 of chapter 86 of the laws of that year, it was provided : '' The district board shall require a uniform series of text books to be used in each separate branch in each school.'' By section 15 of the same act the board was required to provide text books, at the expense of the district, for indigent children whose parents were not able to provide them. By section 1, chapter 157, Laws of 1879, section 28 of article 4 of chapter 122, Laws of 1876, was amended to read :

"Section 28. The district board, each board of education, and each and every school district board shall require a uniform series of text books to be used in each separate branch of study in each school. But each board shall determine for itself within six months from the passage of this act the particular series of text books which shall be used, and when such selection of text books shall hereafter be adopted and introduced in pursuance of the provisions of this act by said board, no change shall be made for a period of five years from the date of such introduction of any particular series of text books, unless four-fifths of the legal voters of any such district shall petition for a change in the series of text books adopted,'' etc.

In 1885, an act was passed authorizing the adoption of a uniform series of text books in each county. The various school districts were authorized to express, at their annual meetings, their desire with reference to such uniformity ; and, whenever a majority of all the

districts in a county indicated their desire for such uniformity, provision was made for the election of delegates from each township and each city of the third class to constitute a county text book board authorized to select text books to be used in each branch of study required by law to be taught in the public schools.   Section 5 of the act provided :

"No text books shall be prescribed in pursuance of the provisions of this act unless the publishers thereof shall have first filed with the county superintendent of public instruction a guarantee of its price, quality and permanence of supply for five years, together with a good and sufficient bond for the faithful performance of said guarantee, conditioned in such sum as the county text book board may determine and approve."

Cities of the first and second class were exempted from the provisions of the act, unless by a vote of their boards of education they decided to join with the county in which they were situated ; in which event they were to be represented on the text book board. On the adoption of county uniformity, no change in text books could be made for a period of five years ; at which time another county text book board might be elected for the same purpose.   By this act, the section above quoted from the Laws of 1879 was repealed. This left the law without any provision for uniformity, except in counties taking advantage of the act providing for county uniformity.   So the law remained until the act of 1897 took effect.   Chapter 179 of the Laws of 1897 ( Gen. Stat. 1897, ch. 61) provides for the creation of a state text book commission, and for the selection and adoption by it of a uniform series of text books for use in the public schools of the state. The commission is authorized to receive bids for furnishing text books, and to enter into contracts for furnishing the same.   It is then provided as follows :

"SECTION 15.   Every contract with any person,

company or corporation, publisher or publishers of school textbooks for use in the schools of this state shall be for five years from the date thereof, and no school district board or board of education of any city of the first or second class shall adopt, use, or permit to be used any other school text books than those provided for in this act: *Provided*, That nothing herein contained shall be construed to prevent the teachers and pupils of this state from using any school text book other than those provided for in this act as reference books in such schools : *And provided further*, That nothing herein contained shall be construed to apply to the use of school books in branches other than those mentioned in this act, nor shall anything herein be construed to apply to counties now under contract for county uniformity of text books, until said contract or contracts shall have expired, or with school districts or cities of the first or second class having such contract until such contract shall have expired according to the terms which have been agreed to in writing : *And provided*, At the expiration of such contracts such counties, school districts and cities of the first or second class shall thereafter be governed by the provisions of this act.''

The defendant claims exemption from the requirement to use the text books adopted by the State Commission under the second proviso, and on the ground that it has entered into valid contracts in writing within the terms of the language quoted. It is conceded that the City of Topeka is not a party to any system of county uniformity adopted in accordance with the act of 1885. It is also conceded that there is no express statute authorizing the board of education of a city of the first class to enter into a contract for text books used in the city schools. It may be said further that since the repeal of section 1 of chapter 157 of the Laws of 1879, there has been no law authorizing the adoption of a uniform series of text books by the board of education, unless under county uniformity. The contention is, however, that boards

of education in cities have and exercise certain corporate powers, and that the general power conferred on them, "to make all necessary rules for the government of the schools of the city," and "to exercise the sole control over the public schools and school property of the city," includes and implies the power to determine what text books shall be used, and to make provision for supplying them.    It is contended that section 15, above quoted, recognizes the existence of this right, and where it has been exercised, exempts the city from the operation of the act.

It will be observed that, if this power has been conferred by the Legislature, it was given without any limitation as to the duration of the contracts or the prices at which books are to be furnished to the patrons of the school.    Neither the city nor the board of education, in its corporate capacity, purchases school books.    All school books used by the pupils are bought and paid for by themselves, or by their parents or guardians.    Even the provision for supplying indigent pupils, which was contained in the act of 1869, seems to have been omitted from the revision of 1876.    It is not apparent that the powers of a board of education in a city of the first class, with reference to adopting text books and contracting for the same, were greater at the time of the passage of the act of 1897 than those of any other school district; except that a city of the first class could not be forced into county uniformity without its own consent.    The power to make a contract which shall be binding for a term of years on all the private citizens within the city is not to be lightly implied.    It is a power that ought to be exercised, if at all, only under the most carefully provided and stringent safeguards.    The temptation to enter into improvident, or even corrupt, arrangements is too great to make unrestricted authority of this kind either safe or desirable.

But it is said that some meaning must be given to the words excepting from the operation of the law "school districts or cities of the first or second class having such contracts until such contracts shall have expired according to their terms"; that the language is meaningless if no power existed to enter into any such contracts; and that by the use of this language there is a legislative recognition of the existence of the power. It must be conceded that, in view of the state of the law existing at the time of the passage of the act, the language employed was not happily chosen. It will be noticed, however, that school districts are placed in the same category with cities of the first class. Under the law, they had as much power to contract in the absence of county uniformity as a board of education in a city; that is to say — none at all. Where county uniformity existed, although no formal contract was provided for by law, a guaranty of price and supply and a bond to secure the same was executed. The guaranty and the bond would of course, be in writing, and amount to valid contracts available to the people of the county, and of the city as well, in case the city took advantage of the uniformity established in the county including it. The adoption of county uniformity is the basis from which all the exemptions in the clause quoted start. It seems to have been the purpose of the Legislature to continue the use of books already adopted by counties, until the expiration of the terms provided for in the act of 1885. On the expiration of the guaranties, the act of 1897 takes effect. This construction gives to the proviso all the effect it can have under the law as it stood at the time of the passage of the act.

The pretended contracts set up in the answer of the defendant are utterly void, and furnish no defense to

this action. It was and is the clear duty of the defendant to cause the course of instruction in the public schools of Topeka to correspond with the system adopted by the State Text Book Commission, and to require and direct the use in the city schools of the text books selected by the commission.

A peremptory writ of mandamus will be awarded as prayed for.