No. 36,817

John Rose, *Appellant,* v. The Board of Directors of School District No. 94, in Miami County, *Appellee.*

(179 P. 2d 181)

Opinion filed April 5, 1947.

*B. J. Carver,* of Paola, was on the briefs for the appellant.

*Bernard L. Sheridan,* of Paola, argued the cause, and *L. Perry Bishop* and *J. Milton Sullivant,* both of Paola, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Parker, J.: The present action involves conflicting claims to a schoolhouse located on a one-acre tract of land situated in the

northwest corner of a described quarter section in Miami county, Kansas. On August 10, 1882, David F. Day, owner of the quarter section, his wife joining, executed a deed, conveying such tract to school district No. 94. Among others the deed contained the following provision:

"Said premises to be used as schoolhouse site and in the event said premises are abandoned for said purposes then the land herein described shall revert to the parties making this conveyance, *with the appurtenances, and all the estate, title and interest of the said parties of the first part therein.*" (Emphasis supplied.)

Subsequent to the execution of the deed, on a date not disclosed by the record, the district placed several buildings on the site and maintained a public school there until about the year 1933 when, it is alleged, the keeping of school on the premises was actually discontinued and such site was abandoned for school purposes.

The plaintiff, by mesne conveyances, is the undisputed owner of one hundred fifty-nine acres of the quarter section. For purposes of this appeal his title to the one acre conveyed to the school district is not in issue, but it is conceded his interest therein and his right to the buildings now situated thereon are whatever he may have acquired under and by virtue of the original deed conveying such tract of land to the district.

The petition, in substance, alleges the facts heretofore stated and in addition, avers that the defendant is about to sell and dispose of a schoolhouse, a coal house and two outbuildings it had erected on the site. Next it states that on abandonment of the one acre for school purposes title to such tract, together with all improvements now situated thereon, reverted to the plaintiff. It then prays that plaintiff be decreed to be the owner of all such property and that defendant be permanently enjoined from moving the buildings.

To the petition, in form as heretofore related, the defendant filed the following motion to strike, and for judgment.

"Now come the defendants in the above entitled action the Board of Directors of School District No. 94 of Miami County, Kansas, and hereby move the court to strike out all of the statements, allegations and averments contained in plaintiff's amended petition herein which refer either directly or indirectly to the buildings and improvements situated upon the one acre tract of land in controversy in this action and to render judgment in favor of the defendants as against the plaintiff by the terms of which it shall be decreed by this court that the plaintiff has no right, title or interest in and to any of the buildings or improvements situated upon said one acre tract and that

the same are owned exclusively by the defendants and that defendants have the absolute right to remove and dispose of the same at any time, and in support hereof allege:

"That the plaintiff's amended petition shows on its face that the plaintiff has no right, title or interest in and to the buildings and improvements on the one acre tract of land in controversy in this action even though he might be decreed to be entitled to the complete ownership of the said one acre tract upon which said buildings and improvements are located; also that the defendants have as a matter of law the right to remove and dispose of all of said improvements at any time, and also that the plaintiff is not entitled to an injunction against the defendants prohibiting the removal of said buildings and improvements."

In due time the trial court sustained this motion in its entirety and rendered judgment decreeing that defendant was the owner of all buildings described in the petition and had full and complete right to sell, remove and dispose of them. In addition it dissolved a restraining order issued at the commencement of the action and denied a permanent injunction. It reserved the question of who had title to the one-acre tract for future determination and decision.

From what has been stated, and as is reflected in plaintiff's single assignment of error the trial court erred in sustaining the motion to strike and in the rendition of its judgment, it is apparent the sole question involved in this appeal is whether, assuming abandonment by the district of the one-acre tract for school purposes as alleged in the petition, the plaintiff when such abandonment occurred, acquired title to and ownership of the buildings located on the abandoned site under and by virtue of the terms and conditions of the deed from Day to the district.

Appellant contends the general rule is that a building permanently fixed to the freehold becomes a part of it. Quite true but, notwithstanding, the rule never has been held by the courts to be inflexible and without exceptions. So far as it applies to buildings constructed by a school district on land acquired by it under a deed containing a reversion clause to the effect the land will revert to the grantor when it is abandoned for school purposes it must be conceded there is a conflict in the decisions. See 56 C. J. 476, § 497, which states:

"Although it has been declared that a school building which has become a fixture on school land is subject to the reversion clause of the deed even though erected for, and devoted to, a public use, both independently of statute and under express statutory provision there is authority that reversion of the school land does not include the schoolhouse thereon."

Surprising as it may seem, although decisions dealing with the general rule are legion, there is a dearth of authority with respect to the legal status of school buildings in the situation just mentioned. Without specifically referring to them, since they are inapplicable or to be disregarded, it will suffice to say our examination of the few decisions holding that school buildings are subject to such a reversionary clause convinces us that they have either been decided under circumstances where there was no statutory limitation on the power of the board to dispose of the district's property or, if one existed, without proper regard to its force and effect.

At the very outset on consideration of the issue in the instant case, assuming but not conceding the reversion clause in question is broad enough to include buildings placed on the real estate subsequent to its acquisition for school purposes, we are confronted with the all-important question whether the district board in accepting the deed in form as herein stated had power to subject the district to its conditions.

That the power of a school district to contract is only such as is conferred, either expressly or by necessary implication, by statute is well-established law in this and other jurisdictions.

In *Schofield v. School District*, 105 Kan. 343, 344, 184 Pac. 480, we said:

"1. The power of a school district to contract is of course only such as is conferred by statute, expressly or by fair implication; and persons dealing with it are charged with notice of this limitation."

To the same effect is *Blankenship v. School District*, 136 Kan. 313, 15 P. 2d 438, involving power of a school board to permit third parties to attach an annex to the district schoolhouse pursuant to an agreement such annex could be used by them for a club room and by the district for school purposes. In the opinion in that case the following statement is found:

"Moreover, such a contract as that alleged by plaintiffs would be altogether beyond the power of the school board to make. The powers of the school board are such as are conferred by statute, and certainly no such statute can be cited. Neither can it be said that by necessary implication would the school board have power to make such a contract as the one alleged by plaintiffs.

"'The limits of an officer's authority are found in the law.' (*Hartford Fire Ins. Co. v. State*, 9 Kan. 210, 226.)

"'When, by statute, official powers and duties are conferred or imposed upon a public officer or official board, the only implied powers possessed by

such officer or board are those which are necessary for the effective exercise and discharge of the powers and duties expressly conferred and imposed.' (*State, ex rel., v. Younkin,* 108 Kan. 634, syl. ¶ 4, 196 Pac. 620.)" (p. 316.)

A general statement of the same doctrine, and decisions from other states there cited, can be found in 47 Am. Jur. 329, § 48; 56 C. J. 479, 481, §§ 504, 511.

For other decisions in this jurisdiction wherein the rule is recognized and applied see: *School District v. Brown,* 2 Kan. App. 309, 43 Pac. 102, holding the officers of a school district could not create a district liability for the building of a schoolhouse unless first authorized to do so by the electors of the district; *State v. Board of Education,* 59 Kan. 501, 53 Pac. 478, where it was held a school board had no power to contract for textbooks for a period of years, notwithstanding it had agreed to do so, where the legislature had subsequently enacted a law providing a uniform series of textbooks; and *Stewart v. Gish,* 109 Kan. 206, 198 Pac. 259, decreeing that a rural high school district and an ordinary school district, each having statutory authority to erect a schoolhouse, could not, without legislative sanction unite in the construction of a single building for joint use.

On the date of the execution of the deed relied on by appellant, section 11, of article 3, chapter 122, of the Laws of 1876 (Compiled Laws 1879, § 5128) was in full force. Portions thereof pertinent to our decision read:

"Sec. 11. The inhabitants, qualified to vote at a school meeting, lawfully assembled, shall have power . . . .

"Seventh—To authorize and direct the sale of any schoolhouse site, or other property belonging to the district, when the same shall no longer be needful for the use of the district."

Worthy of mention, although of no special significance, is the fact language identical to that just quoted can be found in the law of this state from 1876 up to the present moment (see G. S. 1945 Supp. 72-406). It should be added we find nothing in provisions of the statute then in force and effect, either express or arising by necessary implication, which authorized the district board to sell or convey title to school buildings without authorization of the electors as required by the foregoing section. Therefore, it must be regarded as restrictive in character and a limitation upon the power of the district board. It follows that on the date the deed was executed the district board had no power to sell buildings owned

by the district, without proper authorization, even had there been any then located on the one-acre tract. Of a certainty, its action in accepting a deed which by its terms had the effect of binding the district to sell and dispose of buildings subsequently erected by it on that tract, upon its abandonment for school purposes without any consideration whatsoever, was *ultra vires* and void. Day, the grantor, was bound to take notice of the general powers possessed by the board in the use and disposal of public property. He was bound to know of the restrictive statute which precluded sale of the district's property except on compliance with its provisions. He could not circumvent its terms, and thereafter acquire title to school buildings of the district, by the execution of a deed containing a reversion clause such as is to be found in the one upon which appellant bases his claim to the school buildings in controversy.

Heretofore we have mentioned the want of authority on the general subject of whether school buildings placed upon or affixed to the soil constitute real property. There is, however, one outstanding case on the subject, dealing directly with the power of a district board to sell and dispose of school buildings in a situation where its authority to do so—as here—is limited and restricted by statutory provisions, which is entitled to and has been given great weight as a sound precedent. It supports, fortifies and sustains our ultimate conclusion as herein announced. The decision to which we refer is *Schwing v. McClure* 120 Ohio St. 335, 166 N. E. 230, where it was held:

"Members of a board of education of a school district are public officers, whose duties are prescribed by law. Their contractual powers are defined by the statutory limitations existing thereon, and they have no power except such as is expressly given, or such as is necessarily implied from the powers that are expressly given.

"The members of the board of education of a school district are not authorized to convey or transfer to private parties, without consideration, any of the property of the school district, real or personal. Hence, the acceptance by such members of the board of education of a school district of a deed providing that if at any time the premises in question shall cease to be used for school purposes, the same shall at once vest in the said grantors, their heirs and assigns forever, is not effectual to constitute a public school building erected upon such premises with public funds a part of the realty, so that such building passes with the realty upon reversion to the heirs of the grantor." (Syl. ¶¶ 1, 2.)

Since the deed on which appellant bases his claim of title to the school buildings in controversy, otherwise conceded to be owned by

the school district, did not have the legal effect of transferring title to that property to the appellant when the land therein described ceased to be used or was abandoned by the district for school purposes, it follows that the action of the trial court in sustaining the motion to strike, and in then rendering judgment dissolving the restraining order and decreeing the appellees to be the owners of such property with full and complete right to sell, remove and dispose of the same, was proper.

As we conclude we note briefly there is another good reason, technical in its nature but nevertheless sound, why the judgment of the court below must be sustained. The reversion clause in the deed, which we requote for purposes of emphasis, provides "then the land herein described shall revert to the parties making this conveyance, with the appurtenances, and all the estate, title and interest of the said parties of the first part therein." David F. Day and his wife were named as parties of the first part in that instrument while the district was identified as the party of the second part. The petition shows on its face the improvements therein described were not on the land on the date of its execution but were subsequently placed there by appellee.

The general rule is that a construction involving a forfeiture is not favored on the theory that since a deed is the act of the grantor it will be construed most strongly against him. (47 Am. Jur. 347, § 69.)

In this jurisdiction we recognize and apply the doctrine. See *Ritchie v. K. N. & D. Rly.*, 55 Kan. 36, 39 Pac 718, followed and approved in *Rose v. Lanyon*, 68 Kan. 126, 132, 74 Pac. 625, and *Cue v. Johnson*, 73 Kan. 558, 559, 85 Pac. 598, where we held:

"Conditions subsequent, working a forfeiture of an estate, are to be strictly construed." (Syl. ¶ 7.)

And in the opinion said:

"It is a universal rule that the instrument creating the forfeiture will be strictly construed, and that its terms will never be extended by construction (*Wier v. Railroad Company*, 40 Kan. 130)." (p. 57.)

When the deed is tested by the rule its terms must be construed as limiting the reversionary interest of the first parties (grantors) to such estate, title and interest as they may have had in the land and what was on it on the date of the execution of that instrument. The language therein found cannot be extended by construction to have

reference to buildings to be placed on the premises by the second party in the future. To hold otherwise would ignore the plain intent and purpose of the rule. In addition, it would in effect charge the grantors with having attempted by its terms to bind the district to action which they were presumed to know was *ultra vires* and in violation of restrictive provisions of the then existing statute, a result never permitted by judicial construction when the terms of an agreement can be otherwise interpreted.

The judgment is affirmed.