Willard CRAIG, Dot Cavanar Craig, Maggie Yount, Cora Palmer, Fleeda Goodrich, Birl Craig and Evert Craig, Plaintiffs in Error,

v.

Group I: UNKNOWN HEIRS, EXECUTORS, ADMINISTRATORS, DEVISEES, TRUSTEES AND ASSIGNS, IMMEDIATE AND REMOTE, OF Samuel B. CRAIG, Deceased, and Caroline Craig, Deceased.

Group II: Independence Community Corporation, a Corporation, Independent School District No. 29 of Cleveland County, and Independent School District No. 40 of Cleveland County, Defendants in Error.

Willard CRAIG, Hallett Lawrence and Fleeda Lawrence, Formerly Goodrich, Plaintiffs in Error,

v.

INDEPENDENCE COMMUNITY CORPORATION, Defendant in Error.

Nos. 38878, 38879.

Supreme Court of Oklahoma.

Jan. 10, 1961.

Warren H. Edwards, Pearson & Moon, Oklahoma City, for plaintiffs in error.

Ben Huey, Norman, for defendant in error Independence Community Corp.

Luttrell & Luttrell, Norman, for defendant in error Independent School Dist. No. 29 of Cleveland County.

BLACKBIRD, Vice Chief Justice.

This appeal involves a controversy concerning the title and right to possession of one acre of land with a school house, or building, and teacherage thereon, in a rural community of Cleveland County, known as "Independence."

Before establishment of the school thereon, the acre of land was conveyed by its owners Samuel B. and Caroline G. Craig to "The Trustees of School District No. 37 of Cleveland Co., Oklahoma, and Their Successors in Office" by general warranty deed executed and delivered in 1903. Immediately following the legal description of said acre in the deed, is the following:

> "To Be used for a School House site only and when it is used for any other purpose it is to Revert back to the grantors herein or their heirs and assigns."

After the subject land had been used as a "School House site" by District No. 37 for many years, it was deemed necessary, in

1957, to "disorganize" said district and annex the northern part to Norman Independent District No. 29 (1–29), and the southern part to Noble's District No. 40 (I–40). The situation, as described by the witness, Billy W. Marlar, was as follows:

"* * * It seems as though the State passed a law that we had to have fifteen pupils at that time to maintain our school for State aid, we only had thirteen the previous year which would not qualify us for State aid for a school the coming year, so we had to, as I understand it at the time, we would automatically be transferred to the Noble District if we just set there and never done anything. * * * as president of the School Board, I called a special meeting of the community and we had * * * possibly forty people present of the community that was interested in the school building and what was going to happen to their children, where they were going to school at. And we discovered the situation and we come up with the idea that we would divide the school district, approximately the southern half would go to Noble and the northern half would go into Norman * * * and so we set it up that way and held our election. * * *"

The County Superintendent's order of annexation, in accord with the results of the above-mentioned election was made March 29th, 1957, but classes continued on the premises involved until the end of the term in May of that year. During that school term the teacherage was occupied by tenants paying rent to the school board of District 37. About the end of said term, however, they moved to other quarters more to their liking, and in the latter part of the same month (May, 1957) various property owners and residents in the Independence community (that had comprised said District 37) formed a corporation named: "Independence Community Corporation". Said corporation's purposes, as described in its articles of incorporation, were as follows:

"* * * those intended by the Statutes of the State of Oklahoma with respect to religious, educational and benevolent corporations, more specifically, to acquire Independence School teacherage located on an acre in the Southeast corner of Section 2, Township 8 North, Range 2 WIM, Cleveland County, Oklahoma, on RFD 2, out of Norman, Oklahoma, *the use of the School having been discontinued for school purposes,* together with the Independence Cemetery located about an eighth of a mile South of the School in the Northwest corner of Section 12, in said Township; and in connection therewith to carry on the normal community activities under such rules and regulations as shall be adopted from time to time by the members of the Corporation and its Board of Directors; such activities to include non-denominational religious activities, school alumni activities, home demonstration activities, singing clubs, recreational groups (recreation as used here is intended to include supervised dancing), and in general such community activities as will preserve and perpetuate the identity of the locality, the interest of the alumni of such School in the neighborhood and as will generally foster and perpetuate good will and a neighborly feeling throughout the community; all in the interest of people residing in the former Independence School District, their friends, neighbors and guests, and of the alumni of said School wherever they may be." (Emphasis ours).

Thereafter, apparently with the knowledge of, and/or without protest from, the Superintendent of District 29 (Norman), the above-named new corporation assumed possession and control of the property, placing locks on the school house, erecting a sign bearing its name on the building, renting the teacherage to a new tenant, and insuring the property in its name. During the year 1958, said corporation used, or permitted the school house to be used for vari-

ous activities of individuals or organizations in the community of the nature mentioned in its articles of incorporation, except dancing, together with Sunday School of the Nazarene Church, some funerals, and both regular and special meetings of the corporation. Also, during the same year, when "about forty seats" were removed from Jefferson School (apparently a school in the City of Norman) during its remodeling or rebuilding, said seats were transported to, and now remain stored in, said school house.

In August, 1958, after the Independence Community Corporation had accumulated a balance of more than $200 in net income from the uses it had been making of the subject property, including pie suppers, and had graveled the road to the premises, and was in the process of repairing or replacing "warped" sheet rock in the teacherage to make it "more liveable" for a prospective new tenant, and Samuel and Caroline Craig were both dead, their heir, Willard Craig, and other heirs of said deceased grantors, went upon and occupied the premises, in March, 1959, tearing down the Independence Community Corporation sign, posting "keep out" signs on it, and asserting and enjoying exclusive possession of the premises.

Soon afterward, in the same month, the Independence Community Corporation, as plaintiff, instituted an action in forcible entry and detainer against Willard Craig and the other occupying Craig heirs, as defendants, in one of Cleveland County's Justice of the Peace Courts. Upon trial of said cause, the Justice of the Peace rendered judgment for the plaintiff corporation. Defendants thereafter appealed the case to the District Court as its Cause No. 18335.

Shortly thereafter, the Craig heirs, as plaintiffs, instituted a quiet title action against Independence Community Corporation, Independent School Districts No. 29 and 40 of Cleveland County, and the unknown heirs, executors, etc., of Samuel B. and Caroline G. Craig, deceased, as defendants, said action being docketed as District Court Cause No. 18337. In their petition, said plaintiffs alleged, in substance, among other things, that use of the subject acre of land as a school house site was abandoned in 1957, and that thereupon the " * * * real property automatically reverted * * *" to them, as heirs of Samuel and Caroline Craig, deceased. In the petition's prayer, plaintiffs asked the court to decree, among other things, that the defendant corporation and school districts " * * * have no right, title, interest or estate in and to said property *and premises.*" (Emphasis ours).

In its answer, the defendant corporation asserted no claim of title to the property involved, but alleged that the defendant School Districts 29 and 40, were the owners of the school house " * * * and appendages * * *", and that said owners had permitted the corporation " * * * to use and occupy the premises * * *" as a "tenant". In this answer, as in School District 29's answer, it was denied that the use of the land, as a school house site, had been abandoned, and it was further alleged that, regardless of the ownership of said land, the two school districts owned " * * * the improvements on said premises * * *"

When the case came on for trial before the court, it was stipulated that it be consolidated with the hereinbefore described forcible entry and detainer appeal docketed as Cause No. 18335, supra, and that the court reserve until a later date "trial and/or judgment" as to the unknown heirs, etc., of Samuel and Caroline Craig, and Independent School District No. 40, which was in default of pleading in the case.

At the trial, the hereinbefore related facts, and others, were established by evidence and stipulation, and testimony was elicited to the effect that the extracurricular activities for which the subject acre of land had been used since abolition of School District No. 37, were not materially different from those for which it had previously been used. However, no evidence was adduced indicating a purpose of ever using the premises again for public school classes.

At the close of the trial, the court entered judgment sustaining separate demurrers to the evidence interposed by Independence Community Corporation and School District No. 29, and dismissing the action. After the overruling of their motion for a new trial, the Craig heirs filed two separate appeals docketed as Nos. 38878 and 38879, in this court, as if separate judgments had been entered in District Court causes Nos. 18335 and 18337, supra. However, as said causes Nos. 18335 and 18337, were tried as one consolidated case, we will treat said appeals herein as one, in resolving the issues presented. Also, we will refer to the parties herein as they appeared at the trial, namely: Willard Craig and the other heirs of Samuel and Caroline Craig, as "plaintiffs", and the Independence Community Corporation and Independent School District No. 29, as "defendants".

For reversal of the judgment, plaintiffs argue under their Proposition I, in substance, that in view of the reverter provision in the hereinbefore quoted deed executed and delivered by Samuel and Caroline Craig to the Trustees of School District No. 37, and the discontinuance of school on the land therein described under the circumstances of this case, it was error for the trial court to refuse the quieting of their title, as prayed for. Under their Proposition II, they argue, in substance, that Title 70, O.S.1951 § 7–6, which the trial court apparently relied upon in reaching his decision, does not defeat the deed's said provision.

In their brief, defendants recognize the fact, they conceded at the trial, that school class work had long since been discontinued on the premises, but, despite this, they contend that there has been no abandonment of the property for school purposes, because the discontinuance of school was not voluntary, but was forced upon School District No. 37 by statute; because the evidence shows the storage of seats on the premises, as aforesaid, and that " * * * further use (of the property) for school purposes is contemplated by District 29"; and Title 70, § 7–6, supra, prohibits " * * * the an-nexing districts 29 and 40 to rent, move or sell the property without the approval of the people of the disorganized district (No. 37) at an election held for that purpose * * *".

In a general way, we must uphold the position of plaintiffs and reject that of defendants. The evidence defendants cite as showing that District No. 29 contemplated further use of the property "for school purposes" is the testimony of Mr. Garrison, Superintendent of said District, who, after testifying that the hereinbefore mentioned forty seats from the old Jefferson School building were stored in the former District No. 37 school house, further testified:

"Q. What is the future disposition of that furniture, do you intend to move it back into the school (Jefferson) when the new (Jefferson) building is completed? A. Well the new building is completed, we are short of storage space, we can always use storage space.

*    *    *    *    *    *

"Q. And * * * you are short of storage? A. Yes.

"Q. What are your plans with respect to further storage out there? A. Well, we can use further storage and possibly it would be used for that and some other buildings, too, we are very short of storage space and we are not able financially, to build proper ware house space within on our premises here.

*    *    *    *    *    *

"Q. I'd like to ask Mr. Garrison if there is any contemplated or intended use, maybe not immediately, but in the future, of the premises out there, in connection with the transportation of students or any other, that you would know about that we wouldn't know about, in connection with your responsibility of superintendent of schools? A. No, I would say that any future use of it will have to be by joint agreement between the two districts, what our needs will be, I can't say. It could be used, part of it at least, as a collect-

ing point for children who are waiting for busses, but that would have to be with an agreement with Noble and whether they would agree, I don't know.

\* \* \* \* \* \*

"Q. But that is a possible use? A. Yes and it is possible that we will want to store equipment out there, too.

\* \* \* \* \* \*

"Q. Now if you reached the point where you had more students than you had overflow buildings, is it possible that you might use this building out here? A. It is possible, some of the schools over the State are doing that, whether we would, I couldn't say whether we would or not, it is possible, though."

In Putney v. School Dist. No. 4 Of Town Of Brookfield, 215 Wis. 539, 255 N.W. 76, 77, the deed of land to the school district grantee had a provision in it reading as follows:

"The same to be used for school purposes so long as said district may wish and require, and when no longer wanted for such purpose, said above described land shall revert to the party of the first part."

There, the court said, concerning the quoted language:

" \* \* \*, if it does not mean that when the grantee ceased to use the premises for school purposes, it should revert to the grantee or his heirs, it means nothing."

It will be observed that in requiring the land "To Be used for a School House site only and when it is used for any other purpose it is to Revert back \* \* \*", the deed in the present case is more definitely restrictive than the one in the cited case, but, despite evidence there that the school district—though it had acquired a new school building—was still using the old building on the old site to store old school furniture, and contemplated using it for playground purposes, the appellate court affirmed the lower court's judgment quieting the plaintiffs' title. Here, there is no question, on the basis of the undisputed facts, that the land—despite its variety of past uses—has not been used for the site of a school, or school house, for nearly two years or more.

Here, as indicated by the above-quoted testimony, the evidence shows no definite intention or contemplation, to use the land for any purpose connected with maintaining a public school on it. Defendants fail to demonstrate, by citing statute or legal rule or decision, that the difference in the circumstances surrounding discontinuance of school in the present case, and those in the cited Wisconsin case, furnishes any reason or basis for not following that precedent here. In Tit. 70 § 7-6, supra, there is no mention of the land, or site, upon which a school building is located. Said statute mentions only "building" and "appendages"; and defendants wholly fail to demonstrate that said statute has any relation to, or bearing upon, title to school house sites, and particularly one, whose use was obtained by a deed like the Craig deed. Nor do they cite any other Oklahoma Statute dealing with the disposition of school house sites (as distinguished from school buildings) which does. However, they urge application to this case of the same principles applied in Rose v. Board of Directors of School Dist. No. 94, 162 Kan. 720, 179 P.2d 181, 185, wherein, in the course of determining ineffective, as to a school house, a deed's reversionary clause purporting to include "appurtenances", the court quoted a Kansas Statute pertaining to the disposition of school property. From said quoted statutory provisions, it appears that school district inhabitants were given power to authorize and direct " \* \* \* sale of any school house site \* \* \*", Comp. Laws 1879, § 5128, as well as other property; but the court did not say that said statute was any obstacle to the operation of the reversionary clause upon the site, or land, where the school house stood. It applied the statute only to the building, which was erected with school district funds, and, which (aside from any legal effect its at-

tachment to the land, or realty, might have) was concededly the property of the school district. That differs from the situation here, where the trial court, in sustaining defendants' general demurrers, made no distinction between title to the buildings and title to the land; and it was contended that, by the terms of the Craigs' limited conveyance to the school district, the land *never* belonged to said grantee in absolute and unlimited fee.

■■ We think that on account of the terms of the grant, or conveyance, under which school district No. 37 went into possession of the acre of land involved here, it cannot now be treated as "unused" property *belonging to* said school district, or any other school district, and that the evidence made out a prima facie case for quieting plaintiffs' title to it. Since defendants' demurrers were general, and not good as to part of the property involved, the trial court erred in sustaining them. Hamilton v. Brown, 31 Okl. 213, 120 P. 950, 951. On account of this error, said court should have sustained plaintiffs' motion for a new trial. Since, by reason of his order sustaining defendants' demurrers, the trial court never reached the question of title to the former school house and teacherage (see 28 A.L.R. 2d 566, at Note 3) we express no opinion thereon, but reverse the order overruling plaintiffs' motion for a new trial, and remand the case to said court with directions to grant a new trial, and proceed in a manner not inconsistent with the views expressed herein.

WILLIAMS, C. J., and HALLEY, DAVISON, JACKSON, IRWIN and BERRY, JJ., concur.

WELCH and JOHNSON, JJ., dissent.

WELCH, Justice (dissenting).

I respectfully dissent to this reversal of the trial court's judgment in favor of school district.

I would affirm the trial court on the theory that there was not sufficient showing

of such an abandonment or nonuser, or such incompatible or inconsistent use, by school district, as to forfeit this property and cause same to revert back from the district to private ownership.